581 P.2d 688

**PEOPLE of the State of Arizona ex rel. Bruce E. BABBITT, the Attorney General, Appellant,**

v.

**Bill J. HERNDON, dba American Indian Jewelry, Appellee.**

No. 13596.

Supreme Court of Arizona,
In Banc.

June 6, 1978.

Bruce E. Babbitt, Former Atty. Gen., John A. LaSota, Jr., Atty. Gen., Anthony B. Ching, Chief Counsel, Economic Protection Division, Phoenix, for appellant.

Jennings, Strouss & Salmon by Leo R. Beus, Phoenix, for appellee.

GORDON, Justice:

In the first part of 1976, the Attorney General initiated an investigation of Bill J. Herndon, d. b. a. American Indian Jewelry, to determine whether his sales and advertising practices violated the Consumer Fraud Act A.R.S. § 44–1521 et seq. To aid his investigations under the Act, the Attorney General is empowered to engage in extensive pre-complaint discovery if he has reasonable cause to believe that the investigated party has violated the act. A.R.S.

§ 44–1524.[1] Pursuant to his authority under this provision, the Attorney General, in early June, 1976, issued to Herndon a Demand for Production of Documents or Tangible Objects, a Demand to Answer Written Interrogatories and a Demand to Appear and be Examined Under Oath. These Demands essentially sought information concerning the validity of certain representations of "regular prices" in advertisements placed by Herndon in local newspapers. Attached to the Demands were three representative ads placed by Herndon in local newspapers in 1976. One ad was captioned "½ PRICE SALE", another "Spring Clearance Sale", and the third, "Inflation Fighter Sale". Each advertisement promised a "savings" of 50% or more and each ad contained a list of specific items that were on sale. Connected with each item was a representation of "regular value" followed by the "special" price.

Contending that the Attorney General had no reasonable cause to initiate the investigation, Herndon refused to comply with the Demands. A.R.S. § 44–1527 states:

"If any person fails or refuses to file any statement or report, or obey any subpoena issued by the attorney general, the attorney general may, after notice, apply to a superior court and, after hearing thereon, request the following order until the person files the statement or obeys the subpoena:

1. § 44–1524 Powers of attorney general

"Upon receipt of a written complaint signed by the complainant to the attorney general setting forth facts that a person has engaged in, or is engaging in, or is about to engage in, any practice declared to be unlawful by this article, or when the attorney general has reasonable cause to believe that such is the case, and when he believes it to be in the public interest that an investigation should be made to ascertain whether a person in fact has engaged in, is engaging in, or is about to engage in, any such practice, he may:

"1. Require such person to file on such forms as he prescribes a statement or report in writing, under oath, as to all the facts and circumstances concerning the sale or advertisement of merchandise by such person, and such other data and information as he may deem necessary.

"1. Adjudging such person in contempt of court.

"2. Granting injunctive relief, restraining the sale or advertisement of merchandise by such person which is subject to the charge of being an unlawful practice as defined in this article.

"3. Granting such other relief as the court may deem proper. As amended Laws 1972, ch. 49 § 3."

Pursuant to this enforcement provision, the Attorney General on July 2, 1976, applied to the Superior Court of Maricopa County for an order to Herndon to show cause why he should not be adjudged in contempt of court and be enjoined from advertising and selling merchandise until he complied with the commands of the Attorney General. The trial judge issued the order returnable July 30, 1976. Appellee reacted to the order by filing a Notice of Taking Deposition and Subpoena Duces Tecum to Arthur Garcia, Assistant Attorney General on July 9, 1976, which deposition was to be taken on July 16, 1976. The subpoena commanded that the Attorney General produce "any and all records relating to the above entitled matter, including but not limited to all writings, notes, records, documents, letters, contracts, agreements or complaints; any evidence of any probable cause that there has been a violation of the statute; any and all copies of reports of investigators, agents or employees of Petitioner wherein contact was made with Respondent or his agents or employees".

"2. Examine under oath any person in connection with the sale or advertisement of any merchandise.

"3. Examine any merchandise or sample thereof, or any record, book, document, account, or paper as he may deem necessary.

"4. Pursuant to an order of the superior court, impound any record, book, document, account, paper, or sample or merchandise material to such practice and retain the same in his possession until the completion of all proceedings undertaken under this article or in the courts. As amended Laws 1972, Ch. 49 § 2. Effective April 10, 1972."

While the Attorney General may engage in discovery without reasonable cause to believe there has been a violation of the Act if he has received a written complaint, he has conceded in this case that there have been no such complaints.

The Attorney General immediately filed a Motion for a Protective Order, which motion was denied. After a number of additional procedural maneuvers, the trial judge granted Herndon's motion to compel discovery on July 30, 1976. On December 1, 1976, after oral argument, the court granted Herndon's motion to dismiss the order to show cause as a sanction against the State under Rule 37(b)(2)(C) Rules of Civil Procedure because of the Attorney General's refusal to have his deposition taken. We have taken jurisdiction of the Attorney General's appeal pursuant to Rule 47(e)(5) Supreme Court Rules.

The primary question to be resolved on appeal is whether discovery against the Attorney General is available to an investigated party to assist in preparation of a defense at a hearing pursuant to A.R.S. § 44–1527 that the Attorney General has no reasonable cause to believe that there has been a violation of the Consumer Fraud Act.

Before resolving that issue, we must first answer the threshold question of whether such a defense is even available to an investigated party at the enforcement hearing. We hold that it is. The Supreme Court has held that a party may resist an administrative subpoena on any appropriate grounds. *Reisman v. Caplin,* 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964); *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). These include that the inquiry is not within the agency's scope of authority, that the order is too vague, that it seeks irrelevant information and that the summons is being used for an improper purpose such as to harass or put pressure on the investigated party to settle a collateral dispute. *United States v. Powell, supra* ; *United States v. Litton Industries,* 462 F.2d 14 (9th Cir. 1972). In our view, the requirement that the Attorney General have reasonable cause to believe there has been a violation of the act is an additional substantive limitation on his power to engage in precomplaint discovery, inserted by the Legislature to prevent the abuses or excesses which might result from unlimited powers of investigation. As this Court has stated in connection with grand jury investigations:

> " 'Investigations [by grand juries] for purely speculative purposes are odious and oppressive and should not be tolerated by law. Before they may be instituted, there must be knowledge or information that a crime has been committed. There is no power to institute or prosecute an inquiry on chance or speculation that some crime may be discovered. (Citations omitted).' Such investigations are plainly tyrannical, lending themselves to abuses for politically inspired purposes. They are beyond the scope of the inquisitional powers of a grand jury and are not to be allowed." *Wales v. Tax Commission,* 100 Ariz. 181, 183–84, 412 P.2d 472, 474 (1966).

The only effective method of protecting an investigated party against these possible abuses is to require the Attorney General, if challenged on that ground, to make some showing at the enforcement hearing that there is reasonable cause to believe that there has been a violation of the act.[2]

**2.** The Civil Rights Act of 1964 states that the Attorney General may file a civil complaint when he has reasonable cause to believe that the defendants have violated the act. The state has cited a number of cases under that act for the proposition that an investigated party is not entitled to challenge the basis of the Attorney General's reasonable cause. *U. S. v. Building and Construction Trade Council,* 271 F.Supp. 447 (E.D.Mo.1966); *U. S. v. Northside Realty Associates,* 324 F.Supp. 287 (N.D.Ga.1971); *U. S. v. International Brotherhood of Electrical Workers Local, No. 683,* 270 F.Supp. 233 (S.D. Ohio 1967); *U. S. v. Mitchell,* 313 F.Supp. 299 (N.D.Ga.1970). The rationale of these holdings has been that once a complaint has been filed it is the duty of the court not to determine whether there was reasonable cause for filing the complaint, but to adjudicate its merits. The courts have also pointed out that after a complaint has been filed full discovery rights are available to the defendant. By contrast, in an enforcement proceeding under the Consumer Fraud Act, the merits of the case are not before the court and, hence, one of the few methods the court has of curbing any potential excesses or abuses is to require the Attorney General to establish the reasonable cause for his investigation prior to obtaining the information sought.

It does not follow, however, from our answer to this preliminary question that the appellee is entitled to discovery to aid in preparation of his defense. Certainly, principles of due process would not compel such a conclusion. While due process may require that appellee have an opportunity to present every available defense at the enforcement hearing, *Lindsey v. Normet,* 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972), it does not guarantee him any particular form or method of procedure. *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). Due process is a flexible concept calling for such procedural protections as the particular situation demands. *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). All that is necessary is that the procedure be tailored in light of the governmental and private interests that are involved, to insure that appellee is given a meaningful opportunity to present his case. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). As will be discussed in more detail below, when the only issue to be resolved at a hearing is whether there is reasonable cause to believe that there has been a violation of the act, discovery is not necessary for appellee to have a meaningful opportunity to be heard.

Since the rules governing discovery are grouped under the Rules of Civil Procedure, the analysis of whether discovery is available to appellee must begin with the question whether an administrative subpoena enforcement hearing is the type of legal proceeding the Rules of Civil Procedure were designed to regulate. The scope of the applicability of the Rules of Civil Procedure is outlined by Rule 1, which states: "These rules govern the procedure in the superior courts of Arizona in all suits of a civil nature whether cognizable as cases at law or in equity". Appellee argues persuasively that the enforcement hearing is "of a civil nature", and that, since the state is seeking an injunction, it must be recognized as an equitable matter. However, limiting our consideration still to the language of the rule, the subpoena enforcement hearing is not the sort of proceeding this court envisaged in limiting the application of the rules to "suits" and "cases".

By "suits" and "cases" we mean the sort of civil litigation, often termed "plenary lawsuits", the purpose of which is to resolve ultimate issues of rights, duties, liability and damages. Because of the finality of such litigation, the Rules of Civil Procedure, including the Rules of Discovery, were designed to regulate the proceedings in a manner that allows the parties to present their positions as comprehensively and effectively as possible.

By contrast, while a subpoena enforcement hearing must be regarded as a judicial proceeding, it cannot be characterized as a "case" or "suit". It does not resolve any ultimate issue of liability or guilt. Rather, the only adverse impact upon appellee resulting from a finding of reasonable cause is that he will be required to provide the Attorney General with information about his business practices. The hearing takes place prior to the filing of a complaint at a stage of the proceedings when the Attorney General is attempting only to determine whether there is sufficient evidence to warrant the filing of a complaint. The subpoena enforcement hearing is merely an incidental judicial adjunct to what is still the administrative investigatory stage of the proceedings. To permit counterdiscovery at such an early stage in the enforcement proceedings would serve only to unduly hamper and delay the Attorney General's duty to investigate possible fraudulent practices. We agree with the statement in *Hannah v. Larche,* 363 U.S. 420, 443, 80 S.Ct. 1502, 1515, 4 L.Ed.2d 1307 (1960) that,

"[T]he investigative process could be completely disrupted if investigative hearings were transformed into trial-like proceedings. * * * Fact finding agencies * * * would be plagued by the injection of collateral issues that would make the investigation interminable. * * * This type of proceedings would make a shambles of the investigation and stifle the agency in its gathering of facts".

458

Furthermore, the Attorney General alleges that he is requesting information from appellee as part of an industry wide investigation. To require the Attorney General to divulge the sort of information requested by appellee prior to the time the Attorney General is prepared to file charges against any member of the industry could well completely thwart any effort thereafter to obtain information from other members of the industry.

A further difference between a plenary lawsuit and a subpoena enforcement hearing is that in the former, one party must support his position with evidence meeting a standard of proof ranging from "preponderance of the evidence" to "beyond a reasonable doubt". The enforcement hearing, however, is more in the nature of the preliminary hearing in criminal law, where the level of proof required of the state is considerably lower.[3]

While we do not intend to minimize the judge's responsibility in making the reasonable cause determination, it must be recognized that the decision is relatively uncomplicated, as it does not involve extensive weighing or testing of evidence or any resolution of conflicts in the evidence. The question at the hearing is not whether the state's information is true or uncontradicted, but whether, assuming its accuracy, the state has in its possession sufficient information to satisfy a judge that it is reasonable to believe that there has been a violation of the act. Although the appellee is, of course, entitled to present whatever evidence or arguments he may have in support of his defense, as a practical matter, the hearing focuses primarily on the evidence presented by the state in support of its own position. Since the judge does not weigh or resolve conflicts in the evidence, if the At-

torney General presents sufficient evidence at the hearing to satisfy the reasonable cause standard, the information adduced by counterdiscovery would not appreciably increase appellee's ability to undermine the Attorney General's showing.

We are aware of a number of federal cases which hold that the trial judge may, in certain limited circumstances, compel discovery against a government agency prior to an administrative enforcement hearing. See, *United States v. McCarthy,* 514 F.2d 368 (3rd Cir. 1975); *F. T. C. v. Bramman,* D.C., 54 F.R.D. 364 (1972); *Daly v. United States,* 393 F.2d 873 (8th Cir. 1968); *F. T. C. v. Browning,* 435 F.2d 96 (1970). However, their holdings are grounded in a specific Federal Rule of Civil Procedure, not adopted in Arizona, which gives the rules limited applicability to administrative subpoena enforcement proceedings.[4]

The order of the Superior Court dismissing the Order to Show Cause is vacated. The case is remanded to the Superior Court with instructions to grant appellant's motion for a protective order and for further proceedings not inconsistent with this opinion.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and HOLOHAN, JJ., concur.

---

**3.** While the analogy between the enforcement hearing and the preliminary hearing is not perfect, it is interesting to note that this court has held that the trial judge is without authority to compel discovery against the County Attorney prior to the preliminary hearing. *State ex rel. Berger v. Justice Ct. of N. E. Phoenix, etc.,* 112 Ariz. 24, 536 P.2d 1042 (1975).

**4.** Federal Rule of Civil Procedure, Rule 81(a)(3) states: "* * * These rules apply to proceedings to compel the giving of testimony or production of documents in accordance with a subpoena issued by an officer or agency of the United States under any statute of the United States except as otherwise provided by statute or by rules of the district court or by order of the court in the proceedings."