908 P.2d 799

BREWER OIL COMPANY, Queen Oil and Gas Company, Bell Gas, Inc., A–Doc Oil Company, and KW Fuels, Inc., Petitioners/Cross–Respondents–Appellees,

v.

The STATE of New Mexico By and Through the Attorney General for the State of New Mexico, Thomas S. UDALL, Respondent/Cross–Petitioner–Appellant.

No. 16196.

Court of Appeals of New Mexico.

Nov. 9, 1995.

F. Edwin Hallman, Jr., David C. Moss, Decker & Hallman, Atlanta, Georgia, Paul Bardacke, Peter S. Kierst, Kerry C. Kiernan, Eaves, Bardacke & Baugh, P.A., Albuquerque, for Petitioners/Cross–Respondents–Appellees.

Tom Udall, Attorney General, Jerome Marshak, Assistant Attorney General, Santa Fe, Susan G. White, Assistant Attorney General, Albuquerque, for Respondent/Cross–Petitioner–Appellant.

*OPINION*

HARTZ, Judge.

1. The Attorney General appeals the district court's entry of a summary judgment

quashing five civil investigative demands (CIDs). The only question to be resolved is whether the record before the district court established beyond genuine dispute that the Attorney General had no proper purpose for seeking the CIDs. Because we answer in the negative, we reverse and remand to the district court for further proceedings.

*BACKGROUND*

2. The New Mexico Antitrust Act, NMSA 1978, §§ 57–1–1 to –15 (Repl.Pamp.1995), authorizes the Attorney General to apply to the Santa Fe County district court for approval of CIDs that require the recipients to submit to examination under oath or to produce items for inspection and copying. To obtain a CID directed to a particular person, the Attorney General must have "reasonable cause to believe that [the] person has information or may be in possession, custody or control of any document or other tangible object relevant to a civil investigation for violation of [the Antitrust Act]." Section 57–1–5(A). Prior to the filing of an action for violation of the Act, the Attorney General must keep the testimony or material confidential "unless [1] confidentiality is waived by [a] the person being investigated and [b] the person who has testified, answered interrogatories or produced material, or [2] disclosure is authorized by the court." Section 57–1–5(C).

3. In May and June 1994 the Santa Fe County district court issued CIDs to the five gasoline marketers (collectively referred to as the Marketers) who are the petitioners in this case. The Attorney General's applications for the CIDs stated that each of the Marketers possessed information relevant to a civil investigation under the Antitrust Act and alleged that gasoline price and market data suggested that segments of the gasoline industry may be violating the Act. In August and September 1994 the Marketers filed petitions for declaratory judgment in the Fifth Judicial District seeking a determination that the CIDs were unlawful and should be quashed. The Attorney General cross-petitioned for orders requiring the Marketers to comply with the CIDs. The five suits were consolidated in Eddy County district court.

4. On November 17, 1994 the district court conducted a hearing on the Marketers' motions for summary judgment. Two weeks later the district court entered an order granting the motions, stating that the order was "based upon the uncontested proof that the [Attorney General] has conducted an investigation under [the Antitrust Act] for an improper purpose and intends to use the information elicited in the investigation for impermissible purposes."

*DISCUSSION*

5. First, to avoid confusion we note that the ground for quashing the CIDs was not the lack of evidence of a violation of the Antitrust Act. Under Section 57–1–5 it is necessary only that the Attorney General be conducting a civil investigation to determine whether the Antitrust Act has been violated and that there be reasonable cause to believe that the recipient of the CID has information or materials relevant to the investigation. *See Material Handling Inst. v. McLaren,* 426 F.2d 90 (3d Cir.) (CID obtained by justice department), *cert. denied,* 400 U.S. 826, 91 S.Ct. 50, 27 L.Ed.2d 55 (1970); *F.T.C. v. Invention Submission Corp.,* 965 F.2d 1086 (D.C.Cir.1992) (CID obtained by FTC), *cert. denied,* 507 U.S. 910, 113 S.Ct. 1255, 122 L.Ed.2d 654 (1993); *cf.* NMSA 1978, § 57–1–15 (Repl.Pamp.1995) (New Mexico Antitrust Act "shall be construed in harmony with judicial interpretations of the federal antitrust laws"). This statutory standard appears to be essentially the same standard that generally applies to investigative subpoenas. *See In re Investigation No. 2 of the Governor's Organized Crime Prevention Comm'n,* 91 N.M. 516, 517, 577 P.2d 414, 415 (1978) ("[T]he inquiry must be within the authority of the agency[,] the demand must not be too indefinite[,] and the information must be reasonably relevant to the purpose of the investigation.").

6. Instead, the basis for the quashing of the CIDs was the impropriety of the Attorney General's purpose. We agree that if the Attorney General obtains a CID without having the purpose of pursuing a civil investigation for possible violations of the Antitrust Act, then the CID is improper and should be quashed. *See Chattanooga*

*Pharmaceutical Ass'n v. United States Dep't of Justice,* 358 F.2d 864 (6th Cir.1966). Quashing the CID is permissible, however, only if improper purposes are the exclusive purposes of the Attorney General. If the Attorney General also has a proper purpose, the CID is lawful. *See Donaldson v. United States,* 400 U.S. 517, 532–36, 91 S.Ct. 534, 543–45, 27 L.Ed.2d 580 (1971); *In re McVane,* 44 F.3d 1127, 1139 (2d Cir.1995); *Eli Lilly & Co. v. Staats,* 574 F.2d 904, 909–10 (7th Cir.), *cert. denied,* 439 U.S. 959, 99 S.Ct. 362, 58 L.Ed.2d 351 (1978); *Lynn v. Biderman,* 536 F.2d 820, 826 (9th Cir.), *cert. denied,* 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287 (1976); *F.T.C. v. Carter,* 636 F.2d 781, 789 (D.C.Cir.1980). Of course, protective orders are appropriate to prevent use for an improper purpose of information obtained by a CID. *See Lynn,* 536 F.2d at 826–27.

■ 7. In the present case the Attorney General's purpose in seeking the CIDs was determined on summary judgment. The procedural setting for the determination is critical to our resolution of the appeal. Summary judgment is granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." SCRA 1986, 1–056(C) (Repl.1992); *see Richardson v. Glass,* 114 N.M. 119, 122, 835 P.2d 835, 838 (1992). The moving party must submit a memorandum which sets out "a concise statement of all of the material facts as to which the moving party contends no genuine issue exists." SCRA 1–056(D). Each fact must "refer with particularity to those portions of the record upon which the moving party relies." *Id.* If the opposing party does not specifically controvert a fact set forth in the moving party's memorandum, the fact "shall be deemed admitted." *Id.; see Richardson,* 114 N.M. at 122, 835 P.2d at 838.

8. The Marketers' briefs in support of their motions for summary judgment recited 29 facts (Facts) about which they claimed there was no genuine issue. They attached affidavits and other documents upon which they relied as support for their Facts. The supporting document relevant to the issues on this appeal is their Exhibit 1, a report by the Attorney General entitled "Gasoline Pricing and Marketing in New Mexico/An Interim Report/May 1994." The Marketers incorporated the Interim Report by reference into their memoranda in support of their motions for summary judgment.

9. On appeal the Marketers contend that "[t]he uncontested facts demonstrate that the Attorney General was attempting to influence the free-market economy by collecting information under the guise of CIDs, which would eventually be used to formulate legislation designed to fix and lower the price of gasoline." They rely on their Facts 26 through 29, which state:

(26)

The Attorney General's opinion is that "persistently oligopolistic markets with high barriers to entry may be of concern even where there is no identifiable illegal conduct occurring and it may be desirable for the state to intervene in such markets and attempt through regulation or other means to encourage greater competition." *See,* Exhibit 1, page 77.

(27)

Further, "[t]he Attorney General's staff will carefully review legislation enacted in other states intended to foster increased competition in gasoline markets and decrease retail gasoline prices and consider legislative solutions to the problem." *See,* Exhibit 1, page 78.

(28)

The Attorney General is attempting to influence the free-market economy of New Mexico by obtaining confidential financial information under the guise of a CID. *See,* Exhibit 1, page 78.

(29)

The Attorney General has stated that:

We must remember that consumers and members of the gasoline industry are all citizens entitled to the protection of the laws. If there are provable antitrust violations being committed, we are committed to putting a stop to them. But if there are

no such violations, and the question becomes one of deciding as a community what action should be taken to deal with high prices in a particularly vital industry, that will be a question this office cannot answer by itself. We do hope that our intensive study of this industry's pricing behavior will, when it is completed, supply the kind of detailed and sophisticated information which will be needed to deal with these issues.

*See*, Exhibit 1, pages 3 and 4 of the Introduction.

10. In response to the Marketers' motions for summary judgment, the Attorney General did not specifically controvert any of these four recited Facts. Rather than submitting a prehearing affidavit asserting a proper purpose for the CIDs (which would have precluded the summary judgment and avoided the resulting delay), the Attorney General responded simply that "[Facts] numbered 11 through 27 contain allegations, some of which may be true and others of which are false, none of which are material to issues before this Court."

11. Perhaps Facts 26 through 29 read in isolation would establish that the Attorney General's sole purpose in seeking the CIDs was an improper one. But because those Facts rely upon the Interim Report as authority and because the Interim Report is incorporated into the Marketers' memoranda in support of their motions for summary judgment, we must examine the Interim Report as a whole to determine whether the only reasonable conclusion that one can draw from it is that the CIDs were sought for an improper purpose. Our review of the Interim Report reveals that it does not necessarily establish an improper purpose for the CIDs.

12. To be sure, the Interim Report recognizes the possibility that there have been no antitrust violations with respect to the marketing of gasoline, and it suggests that the Attorney General may seek legislation to regulate the market. The Interim Report also states that information acquired by the Attorney General may be used to support such a legislative effort. The Marketers infer that the Attorney General is not interested in pursuing violations of the Antitrust Act but is simply seeking information to support his legislative agenda. Nevertheless, the statements in the Interim Report fall short of establishing beyond genuine dispute that there was any improper purpose for the CIDs, much less that the only purposes were improper.

13. There are two reasons why the inference drawn by the Marketers is not compelled by the Interim Report. First, the Interim Report makes no mention of CIDs. It indicates that the Attorney General had been collecting data by other means for some time. The Marketers do not suggest that it would be unlawful for the Attorney General to use that data to support a legislative agenda. Although one might conclude that the Attorney General would also use any information obtained by CIDs to support a legislative agenda, one could equally presume that the state's highest law-enforcement official would not use information obtained by CIDs for a purpose contrary to law. In other words, a reasonable person reading the Interim Report would not necessarily conclude that the information to be used by the Attorney General for his legislative agenda would include data acquired through CIDs. When it is reasonable to draw two (or more) contrary inferences from undisputed facts, the choice of inference cannot be made on summary judgment. *See National Excess Ins. Co. v. Bingham*, 106 N.M. 325, 328, 742 P.2d 537, 540 (Ct.App.1987).

14. Second, the Interim Report's concession that there may be no Antitrust Act violations in the New Mexico gasoline market does not compel the inference that the Attorney General is not pursuing a legitimate civil investigation to determine whether such violations exist. As noted above, it is appropriate for the Attorney General to seek a CID despite the absence of any certainty that a violation of the Antitrust Act has occurred or is occurring. The introduction to the Interim Report states: "We will be endeavoring first of all to determine whether there are violations of the antitrust laws." If the statement is true, one can infer a proper purpose for the CIDs. The statement may be false, but its falsity cannot be decided on a motion for summary judgment.

15. We have also reviewed the transcript of the hearing on the motions for summary judgment. We find no concession by the Assistant Attorney General attending the hearing that the CIDs had no proper purpose.

16. In short, we hold that the present record cannot sustain a summary judgment quashing the CIDs on the ground that the Attorney General's purpose in seeking the CIDs was improper. The Marketers are, of course, not foreclosed from seeking a determination on this issue on the merits, after a full evidentiary hearing, nor are they foreclosed from pursuing other grounds for quashing the CIDs. In addition, they may seek protective orders to maintain the confidentiality of information obtained by the CIDs. We need not decide at this juncture the circumstances under which disclosure may be authorized by a court pursuant to Section 57–1–5(C). The statute itself fails to provide any substantive guidelines governing disclosure. Until there has been a judicial determination regarding when disclosure is authorized, it would be advisable for the Attorney General to segregate any material acquired through CIDs from information otherwise acquired.

17. For the above reasons, we reverse the summary judgment issued by the district court and remand for further proceedings consistent with this opinion.

18. **IT IS SO ORDERED.**

FLORES and BUSTAMANTE, JJ., concur.