916 P.2d 1344

The WILSON CORPORATION, et al., Petitioners–Appellants,

v.

STATE of New Mexico, ex rel. Tom UDALL, Attorney General, Respondent–Appellee.

Tom UDALL, Attorney General of the State of New Mexico, Petitioner–Appellee,

v.

The WILSON CORPORATION, et al., Respondents–Appellants,

and

Berridge Distributing Co., Inc., et al., Intervenors/Cross–Petitioners–Appellants.

No. 16484.

Court of Appeals of New Mexico.

March 19, 1996.

Certiorari Denied May 2, 1996.

F. Edwin Hallman, Jr., David C. Moss, Decker & Hallman, Atlanta, Paul Bardacke, Peter S. Kierst, Kerry Kiernan, Eaves, Bardacke & Baugh, P.A., Albuquerque, for Appellants The Wilson Corporation, et al.

Tom Udall, Attorney General, Jerome Marshak, Assistant Attorney General, Santa Fe, Susan G. White, Assistant Attorney General, Albuquerque, for Appellee State of New Mexico.

## OPINION

HARTZ, Judge.

1. Pursuant to the New Mexico Antitrust Act, NMSA 1978, §§ 57–1–1 to –15 (Repl. Pamp.1995), the Attorney General obtained approval from the Santa Fe County District Court for civil investigative demands (CIDs) directed to a number of companies for information regarding the pricing and marketing of gasoline in New Mexico. The requests for the CIDs were granted ex parte. *See* § 57–1–5(A). After service of the CIDs, some recipients raised challenges in various courts around the state. This is the second appeal to arise from those challenges.

2. The first appeal concerned a district court summary judgment quashing five of the CIDs. *See Brewer Oil Co. v. State of New Mexico ex rel. Attorney General,* 121 N.M. 106, 908 P.2d 799 (Ct.App.), *cert. denied,* 120 N.M. 828, 907 P.2d 1009 (1995). The district court had ruled that the Attorney General had an improper purpose in seeking the CIDs. We reversed, holding that (1) the CIDs could be quashed only if the *sole* purpose of the Attorney General was an improper one and (2) the undisputed facts before the district court did not compel the inference that the sole purpose of the Attorney General was improper. *Id.* at 108–10, 908 P.2d at 801–03. In the course of the opinion we stated that the Attorney General could obtain enforcement of a CID without producing evidence of a violation of the Antitrust Act; all that was necessary was "that the Attorney General be conducting a civil investigation to determine whether the Antitrust Act has been violated and that there be reasonable cause to believe that the recipient of the CID has information or materials relevant to the investigation." *Id.* at 107, 908 P.2d at 800.

3. This appeal involves a different district court and different companies. Proceedings

from several judicial districts were consolidated in the Colfax County District Court. Some of the proceedings had been initiated by motions to quash filed by recipients of the CIDs (the Marketers). Others apparently had been initiated by petitions filed by the Attorney General seeking orders compelling compliance with CIDs.[1] *See* § 57–1–5(B). After an evidentiary hearing the district court ordered the Marketers to comply with the CIDs. The Marketers raise the following contentions on appeal: (1) the Antitrust Act and the New Mexico Constitution require the Attorney General to establish reasonable cause that a violation of the Act has occurred or is occurring before a CID may be enforced; (2) on the record before the district court the Attorney General failed to establish the propriety of the CIDs and the Marketers demonstrated that the CIDs were issued for improper purposes; and (3) the district court improperly denied the Marketers an opportunity to obtain discovery from the Attorney General. We affirm.

## I. REASONABLE CAUSE

■ 4. The Marketers contend that a court can enforce a CID only if the Attorney General can show reasonable cause to believe that the Antitrust Act has been or is being violated. We disagree. Such a requirement would substantially thwart the purpose of CIDs. After all, the objects of our consideration are civil *investigative* demands. When the Attorney General is investigating whether the Antitrust Act has been violated, the answer to the inquiry is still unknown. If the Attorney General were reasonably satisfied that a violation had occurred or was occurring, he could bring a civil action under the Antitrust Act and obtain relevant records and other information through ordinary civil discovery. *See* §§ 57–1–7 (attorney general may bring an action for civil penalties), 57–1–8 (attorney general may seek injunctive re-

lief); SCRA 1986, 1–011 (Repl.1992) (pleading should not be filed without belief that there is good ground to support it). CIDs enable the Attorney General to obtain information without first accusing anyone of violating the Antitrust Act. This power is hardly unique to our Attorney General. The United States Supreme Court recognized almost 50 years ago that agencies "charged with seeing that the laws are enforced may . . . have and exercise powers of original inquiry." *United States v. Morton Salt Co.,* 338 U.S. 632, 642, 70 S.Ct. 357, 364, 94 L.Ed. 401 (1950) (FTC). Such power, which the Court analogized to the grand jury's power of inquisition, enables the agency to "investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Id.* at 642–43, 70 S.Ct. at 364; *see In re Gold Bond Stamp Co.,* 221 F.Supp. 391 (D.Minn.1963) (power of United States Attorney General to obtain CIDs for antitrust investigation), *aff'd,* 325 F.2d 1018 (8th Cir.1964).

■ 5. In any event, the language of the statute is clear. The pertinent portion of Section 57–1–5(A) states:

> If the attorney general has reasonable cause to believe that a person has information or may be in possession, custody or control of any document or other tangible object relevant to a civil investigation for violation of Section 57–1–1 or 57–1–2 NMSA 1978, he may, before bringing any action, apply to the district court of Santa Fe county for approval of a civil investigative demand, demanding, in writing, such person to appear and be examined under oath, to answer written interrogatories under oath, or to produce the document or object for inspection and copying.

The statute is satisfied if the Attorney General is conducting a civil investigation to determine whether the Antitrust Act has been

---

1. Eventually the Attorney General filed a petition to enforce against each Marketer. Therefore, we need not decide on this appeal whether recipients of CIDs may move to quash or whether the sole available procedure for judicial review is for the recipient to refuse to comply with the CID

and then await initiation of an enforcement proceeding by the Attorney General. *See Reisman v. Caplin,* 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964) (taxpayer cannot obtain injunction or declaratory judgment against IRS summons).

or is being violated, the information or items sought would be relevant to the investigation, and there is reasonable cause to believe that the recipient of the CID possesses the information or item. This construction of Section 57–1–5 follows the unambiguous language of the statute and comports with the interpretation of similar statutes by other courts. *See Brewer Oil,* 121 N.M. at 107, 908 P.2d at 800 (citing federal cases). The Attorney General may have a great deal of evidence of antitrust violations when he seeks a CID. But he need not have such evidence, and he need not disclose what he has, to obtain enforcement of a CID.

6. Nor do constitutional restrictions on government searches and seizures impose a requirement that CIDs issue only upon a showing of reasonable cause to believe that the Antitrust Act has been or is being violated. The United States Supreme Court has long held that the Fourth Amendment to the United States Constitution does not require the government to show a likelihood of a violation of law before it can obtain compulsory process. Addressing the subpoena authority of the Administrator of the Wage and Hour Division of the United States Department of Labor under the Fair Labor Standards Act of 1938, the Court stated, "The gist of the protection [provided by the Fourth Amendment] is in the requirement, expressed in terms, that the disclosure sought shall not be unreasonable." *Oklahoma Press Pub. Co. v. Walling,* 327 U.S. 186, 208, 66 S.Ct. 494, 505, 90 L.Ed. 614 (1946). It then explained:

> Congress has made no requirements in terms of any showing of "probable cause"; and ... any possible constitutional requirement of that sort was satisfied by the Administrator's showing in this case, including not only the allegations concerning coverage [under the Fair Labor Standards Act], but also that he was proceeding with his investigation in accordance with the mandate of Congress and that the records sought were relevant to that purpose....

[H]is investigative function, in searching out violations with a view to securing enforcement of the Act, is essentially the same as the grand jury's, or the court's in issuing other pretrial orders for the discovery of evidence, and is governed by the same limitations. These are that *he shall not act arbitrarily or in excess of his statutory authority, but this does not mean that his inquiry must be "limited by for[e]casts of the probable result of the investigation."*

*Id.* at 215–16, 66 S.Ct. at 508–09 (internal quotation marks, ellipses, and footnotes omitted; emphasis added); *see Morton Salt,* 338 U.S. at 651–54, 70 S.Ct. at 368–69; *see also United States v. Powell,* 379 U.S. 48, 57, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964) (probable cause not necessary for IRS summons); *see generally* 1 Kenneth C. Davis, *Administrative Law Treatise* § 4:1 (3d ed. 1994). The New Mexico Supreme Court summarized the law in *In re Investigation No. 2 of the Governor's Organized Crime Prevention Commission,* 91 N.M. 516, 517–18, 577 P.2d 414, 415–16 (1978). It stated that for the issuance of an administrative subpoena the United States Constitution ordinarily requires only that "(a) the inquiry must be within the authority of the agency; (b) the demand must not be too indefinite; and (c) the information must be reasonably relevant to the purpose of the investigation." *Id.* at 517, 577 P.2d at 415.

7. We are not persuaded that Article II, Section 10 of the New Mexico Constitution would require a "probability" showing that the federal Constitution does not. We are aware of no jurisdiction that imposes such a requirement on administrative subpoenas, summonses, or CIDs as a matter of state constitutional law. *See Benson v. People,* 703 P.2d 1274, 1278–79 (Colo.1985) (en banc) (state constitutional standards are identical to federal standards); *Ajello v. Hartford Fed. Sav. & Loan Ass'n,* 32 Conn.Sup. 198, 347 A.2d 113, 118 (1975) (same); *State ex rel. Shriver v. Leech,* 612 S.W.2d 454, 458–59 (Tenn.) (same), *cert. denied,* 454 U.S. 836, 102 S.Ct. 139, 70 L.Ed.2d 116 (1981).

8. The Marketers' argument under Article II, Section 10 rests primarily on decisions

requiring warrants based on probable cause to conduct administrative searches, specifically *Dunlop v. Hertzler Enterprises*, 418 F.Supp. 627 (D.N.M.1976) (warrantless OSHA search), and *State ex rel. Environmental Improvement Agency v. Albuquerque Publishing Co.*, 91 N.M. 125, 571 P.2d 117 (1977) (warrantless search), *cert. denied*, 435 U.S. 956, 98 S.Ct. 1590, 55 L.Ed.2d 808 (1978). Those decisions, which, incidentally, apply only the federal Constitution, are inapposite. The intrusion resulting from compulsory process is readily distinguishable from the intrusion resulting from a nonconsensual search. As the United States Supreme Court wrote in upholding a Department of Labor subpoena:

> The short answer to the Fourth Amendment objections is that the records in these cases present no question of actual search and seizure, but raise only the question whether orders of court for the production of specified records have been validly made; and no sufficient showing appears to justify setting them aside. No officer or other person has sought to enter [the subpoenaed parties'] premises against their will, to search them, or to seize or examine their books, records or papers without their assent, otherwise than pursuant to orders of court authorized by law and made after adequate opportunity to present objections....

*Oklahoma Press*, 327 U.S. at 195, 66 S.Ct. at 498. The Supreme Court reaffirmed the distinction between compulsory process and nonconsensual entries in *Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 414–15, 104 S.Ct. 769, 773, 78 L.Ed.2d 567 (1984).

 9. Moreover, probable cause does not have the same meaning in the context of administrative searches that it has in the context of searches for evidence of crime. *See Camara v. Municipal Court*, 387 U.S. 523, 537–39, 87 S.Ct. 1727, 1735–36, 18 L.Ed.2d 930 (1967). Probable cause for an administrative search exists "[i]f a valid public interest justifies the intrusion contemplated." *Id.* at 539, 87 S.Ct. at 1736. For example, an area warrant to check for violations of

health and safety codes for housing may be justified by the lack of any inspection for a significant period of time. *See id.* at 538, 87 S.Ct. at 1735. It thus appears that some administrative warrants may issue simply because of a reasonable need to be assured that the law is not being violated. If anything, the administrative-search decisions argue against, not for, a requirement that a CID be enforced only upon a showing of probability that the Antitrust Act has been or is being violated.

10. The Marketers also rely on *In re Investigation No. 2*. That decision followed *Morton Salt* in establishing the requisites for a subpoena obtained by the Governor's Organized Crime Prevention Commission. But our Supreme Court prefaced its reference to *Morton Salt* by noting: "The Commission is an investigatory rather than an accusatory body and therefore its subpoenas are administrative subpoenas. *Dixon v. Pennsylvania Crime Commission*, 347 F.Supp. 138 (M.D.Pa.1972); *Illinois Crime Investigating Comm'n v. Buccieri*, [36 Ill.2d 556], 224 N.E.2d 236 (1967)." 91 N.M. at 517, 577 P.2d at 415. The Marketers argue that the Attorney General has an accusatory function, so his CIDs are not administrative subpoenas governed by *Morton Salt*. We disagree. The Marketers misconstrue *In re Investigation No. 2*. Our Supreme Court's reference to the accusatory-investigatory dichotomy can be understood by reviewing the cases cited at the end of the above-quoted sentence. In particular, *Dixon*, 347 F.Supp. at 141–42, clarifies that what the Court meant by an accusatory body was an agency whose function is "to find named individuals guilty of violating the criminal laws ... and to brand them as criminals in public," as was alleged in *Jenkins v. McKeithen*, 395 U.S. 411, 428, 89 S.Ct. 1843, 1852, 23 L.Ed.2d 404 (1969). The Attorney General has no such role. He does not make findings that anyone has violated the antitrust laws. He only brings actions for the courts to decide. Moreover, *Jenkins* said nothing about requiring probable cause for subpoenas from an accusatory body.

11. In short, we find no support for a constitutional requirement that a CID can issue only if the Attorney General establishes a likelihood that the Antitrust Act has been or is being violated. We do not, however, minimize the power thereby granted to the Attorney General. Even reasonable CIDs can impose a heavy burden on the recipient. A CID may require disclosure of information that the recipient wishes, for perfectly appropriate reasons, to keep confidential. Collecting information and responding to inquiries can be expensive, time-consuming, and distasteful. The Attorney General's authority to obtain CIDs should not be exercised on a whim, but only for sound reasons, although it must be recognized that on occasion the public interest is served when the Attorney General's purpose is to be assured that there has been no violation of the law. *See Morton Salt*, 338 U.S. at 642–43, 70 S.Ct. at 363–64. If Attorney Generals wield the CID authority imprudently, the legislature can impose a reasonable-cause requirement. *See People ex rel. Babbitt v. Herndon*, 119 Ariz. 454, 581 P.2d 688 (1978) (en banc) (statute requires reasonable cause to believe Act has been violated). Or it can even revoke the authority altogether. That decision is for the legislature, not this Court. All we hold today is that the authority granted by Section 57–1–5 is not unconstitutional.

## II. DOES RECORD SUSTAIN DISTRICT COURT'S UPHOLDING VALIDITY OF CIDs?

12. The Marketers contend that the district court should not have enforced the CIDs because (1) the Attorney General failed to present any evidence to support them and (2) the Marketers demonstrated that the CIDs were issued for improper purposes. To resolve these contentions, we must first address the nature of the proceeding in district court.

13. A proceeding to enforce or quash compulsory process—whether denominated a subpoena, a summons, or a CID—on behalf of an administrative agency is not a trial. Such proceedings are summary in nature. *See In re Office of Inspector Gen.*, 933 F.2d 276, 277 (5th Cir.1991); *United States v. Kis*, 658 F.2d 526, 535 (7th Cir.1981) ("[W]e cannot stress too emphatically that these proceedings [regarding an IRS summons] are intended to be summary in nature."), *cert. denied*, 455 U.S. 1018, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982); *Stuart v. United States*, 813 F.2d 243, 250 (9th Cir.1987), *rev'd on other grounds*, 489 U.S. 353, 109 S.Ct. 1183, 103 L.Ed.2d 388 (1989).

14. One reason to handle such matters summarily is that the issues to be determined lend themselves to summary disposition. The court does not need to resolve whether the investigation being conducted by the agency will bear fruit. Ordinarily it need decide only such matters as whether the investigation is within the authority of the agency, whether the information sought is relevant to the investigation, and whether the demand is sufficiently precise. *See In re Investigation No. 2*, 91 N.M. at 517, 577 P.2d at 415. Discovery disputes in civil litigation raise similar questions and are customarily resolved satisfactorily in summary proceedings.

15. A second reason for summary proceedings is that an investigation can readily be thwarted and limitation periods may expire if prolonged litigation accompanies every attempt to obtain information. Courts must be vigilant in protecting the rights of those who object to providing information to an investigating agency, but delaying tactics cannot be countenanced. *See United States v. Witmer*, 835 F.Supp. 208, 213 (M.D.Pa.1993), *aff'd*, 30 F.3d 1489 (3d Cir.1994).

16. To best accommodate the competing interests of the Attorney General and persons opposing his authority, we adopt a procedure that has been followed in other jurisdictions. Before a court will enforce a CID, the Attorney General must make a sworn showing of the basic elements required for compulsory process. *See United*

*States v. Stuart,* 489 U.S. 353, 360, 109 S.Ct. 1183, 1188, 103 L.Ed.2d 388 (1989); *United States v. Davis,* 636 F.2d 1028, 1034 (5th Cir.), *cert. denied,* 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981); *Kis,* 658 F.2d at 536; *Babbitt,* 581 P.2d at 690; *Benson,* 703 P.2d at 1279–80; *Kohn v. State ex rel. Humphrey,* 336 N.W.2d 292, 295–96 (Minn.1983). The affidavit (or testimony) would need to establish the following: (1) the Attorney General is conducting an investigation to determine whether the Antitrust Act has been or is being violated; (2) the information sought is relevant to the investigation; and (3) there is reasonable cause to believe that the recipient of the CID possesses the information. If the Attorney General makes the necessary showing, the person challenging the CID bears the burden of establishing some impropriety in the CID, such as the absence of a proper purpose for the CID, the privileged nature of the information sought, or the unreasonable burden imposed by the CID. *See Powell,* 379 U.S. at 58, 85 S.Ct. at 255; *United States v. Beacon Fed. Sav. & Loan,* 718 F.2d 49, 52 (2d Cir.1983); *Davis,* 636 F.2d at 1034; *In re Newton,* 718 F.2d 1015, 1019 (11th Cir.1983), *cert. denied,* 466 U.S. 904, 104 S.Ct. 1678, 80 L.Ed.2d 153 (1984). The challenge should be supported by a sworn showing.

■■■■ 17. Although the Antitrust Act requires a hearing on the Attorney General's petition to enforce a CID, § 57–1–5(B), the scope of the hearing will depend on the nature of the challenge and the strength of the showing. On this appeal we need not, and probably could not, set forth how to conduct the hearing in every possible circumstance. That decision must be left in the first instance to the sound discretion of the trial judge, just as we leave to the sound discretion of the trial judge the procedure to be followed to resolve discovery disputes in civil litigation. *See Tarkett, Inc. v. Congoleum Corp.,* 144 F.R.D. 282, 284–85 (E.D.Pa.1992); 4A James W. Moore, *Moore's Federal Practice* ¶ 37.02[7] (2d ed. 1995). We recognize that *Brewer* stated that those challenging the CIDs in that case were "not foreclosed from

seeking a determination on this issue on the merits, after a full evidentiary hearing." *Brewer,* 121 N.M. at 110, 908 P.2d at 803. But the point we were attempting to make in that opinion was only that our reversal of the summary judgment quashing the CIDs did not prevent the challengers from ultimately prevailing on the merits. We did not intend to suggest that a challenge to a CID must always be resolved by a "full evidentiary hearing." That issue had not been addressed in the briefs and was not a matter considered by this Court.

■■■■ 18. Turning to the particulars of the case before us, we find no error. Although the petitions for issuance of the CIDs were unsworn, the record contains affidavits by the Attorney General with respect to each of the Marketers. Each affidavit states that his office is investigating possible violations of the Antitrust Act within the gasoline industry and describes the nature of the investigation. The affidavits also assert, although somewhat obliquely, that each of the Marketers markets gasoline. These affidavits satisfy the requirement of a sworn showing of the basic elements required for enforcement of the CIDs. From the affidavits' description of the investigation, the district court could determine whether the information sought was relevant to the investigation and whether it would be reasonable to believe that a gasoline marketer would possess the information.

19. On this appeal the Marketers do not argue that the information sought by the CIDs would be irrelevant to the investigation described in the Attorney General's affidavits. Nor do they contend that it would be unreasonable to believe that a gasoline marketer would possess the information sought. Rather, they contend that the district court erred in denying their motion for judgment at the close of the Attorney General's case because he had totally failed to put on any evidence of compliance with the requirements of Section 57–1–5(B), or even to establish the existence of the individual CIDs. The Marketers' argument appears to assume that the district court hearing was required

to be of the nature of a trial, so that any determination by the court must be supported by evidence admitted at the hearing.

20. The Marketers' argument suffers from three shortcomings. First, even if the Attorney General had failed to make a prima facie showing by the close of his case, the Marketers waived their challenge to the sufficiency of the Attorney General's evidence by proceeding to put on evidence themselves. *See In re Strozzi,* 120 N.M. 541, 544, 903 P.2d 852, 855 (Ct.App.), *cert. denied,* 120 N.M. 498, 903 P.2d 240 (1995). That is, the issue on appeal is the sufficiency of *all* the evidence, not just the evidence submitted before the Marketers' motion.

21. Second, even if the proceeding were a trial, a party at trial has no obligation to prove matters conceded by the opposing party in its pleadings. *See Panzer v. Panzer,* 87 N.M. 29, 33, 528 P.2d 888, 892 (1974). Because of the admissions in the Marketers' responses to the Attorney General's petitions for enforcement, the Attorney General was not required to put on evidence that CIDs had been issued and served upon the Marketers.

22. Third, as previously discussed, the proceeding was not a trial. The district court could appropriately consider affidavits submitted by the parties and then determine whether further evidentiary proceedings were necessary. For example, each of the Marketers submitted affidavits stating that they make pricing decisions concerning motor fuels. These affidavits eliminated any issue regarding the reasonable probability that the Marketers possessed pricing information sought by the CIDs. Also, the Attorney General's affidavits sufficed to establish the prima facie validity of the CIDs. Although the affidavits were submitted after the evidentiary hearing, the district court accepted and considered them. On appeal the Marketers have not challenged their untimeliness. In our view, it was within the district court's discretion to accept the affidavits after the hearing, at least so long as the

Marketers were not precluded from responding to them if they desired. *Cf. Stuart,* 813 F.2d at 250 (IRS can amend affidavit on remand). It appears from the record that the Marketers did not seek to respond to the affidavits.

23. Because the pleadings and affidavits established the prima facie validity of the CIDs, the issue before the district court became whether the Marketers had borne their burden of showing the invalidity of the CIDs in some respect. On appeal the Marketers contend that the respect in which the CIDs were invalid is that the Attorney General's purposes for seeking the CIDs were improper. They argue that the Attorney General sought the information from the Marketers to advance his legislative agenda and his political career. As we stated in *Brewer,* however, CIDs should not be invalidated on this ground unless the alleged improper purposes were the Attorney General's *only* purposes. If one of the purposes of the CIDs was to obtain information for an investigation of violations of the Antitrust Act, then we must uphold the district court's order enforcing the CIDs. Courts can issue protective orders to prohibit improper use of information acquired by CIDs. *See Brewer,* 121 N.M. at 108, 908 P.2d at 801.

24. In this case the district court conducted an evidentiary hearing. It was not persuaded by the Marketers' evidence that the Attorney General had an improper purpose. On the contrary, the district court found: "The evidence shows that the Attorney General is investigating gasoline marketing to determine if there are any violations of the Antitrust Act." The Marketers had the burden of persuasion on this issue. The finding implies that the Marketers failed to meet their burden. We need not determine whether there was sufficient evidence to support the district court's finding that the Attorney General had a proper purpose. To affirm, it suffices if it was rational for the district court to be unpersuaded by the Marketers' evidence that the Attorney General was motivated solely by an improper pur-

pose. *See Lopez v. Adams*, 116 N.M. 757, 758, 867 P.2d 427, 428 (Ct.App.1993) ("If a finding is made against the party with the burden of proof, we [must] affirm if it was rational for the trial court to disbelieve the evidence offered by that party."), *cert. denied*, 116 N.M. 801, 867 P.2d 1183 (1994). Without detailing the evidence at the hearing, we hold that the evidence presented by the Marketers was not so compelling that every rational person would necessarily have determined that the only purposes of the Attorney General were improper ones. We therefore reject the Marketers' challenge on appeal.

## III. DISCOVERY

25. Finally, the Marketers contend that the district court erred by denying them the opportunity to conduct further discovery. Of course, if they were improperly denied discovery which could have assisted them in meeting their burden at the district court evidentiary hearing, we would reverse to enable the Marketers to conduct discovery and then present further evidence to the district court.

■■■■■ 26. The Marketers, however, must meet a heavy burden to be entitled to discovery in an enforcement proceeding.

> [E]nforcement actions are intended to be summary and are designed to secure quick judicial review of administrative activities. Consistent therewith, discovery is allowed in only the exceptional cases "where the circumstances indicate that further information is necessary for the courts to discharge their duty." *SEC v. Dresser Indus.*, 628 F.2d 1368, 1388 (D.C.Cir.) (en banc) (citations omitted), *cert. denied*, 449 U.S. 993 [101 S.Ct. 529, 66 L.Ed.2d 289] (1980).

> As a general rule, "a defendant is not 'entitled to engage in counter-discovery to find grounds for resisting' a subpoena...." *In re EEOC*, 709 F.2d [392,] 400 [ (5th Cir.1983) ] (citations omitted). A limited amount of discovery may be allowed if, for example, "the defendant 'makes a preliminary and substantial demonstration of abuse,' that is, where the defendant has presented 'meaningful evidence' that the agency is attempting to abuse its investigative authority. Anything short of this showing is not enough...." *Id.* (citations omitted). In considering the issue of the scope and range of discovery in enforcement actions, courts " 'must be cautious in granting ... discovery rights, lest they transform subpoena enforcement proceedings into exhaustive inquisitions into the practices of the regulatory agencies.' " *United States v. Aero Mayflower Transit Co.*, 831 F.2d 1142, 1147 (D.C.Cir.1987) (quoting *Dresser*, 628 F.2d at 1388).

*In re Office of Inspector Gen.*, 933 F.2d at 277–78. Also, we agree with the federal appellate courts that "exceptional circumstances must exist before the involuntary depositions of high agency officials are permitted." *Id.* at 278.

■■■ 27. The Marketers argue that the district court erred in its finding that they had "not made a preliminary and substantial demonstration of abuse and improper motive, and therefore discovery to aid in these defenses to compliance with the CIDs will not be allowed." Yet, the Marketers' briefs on appeal do not set forth what discovery they sought or how such discovery would be relevant to the issues on appeal. We will not search the record below to determine whether there is a basis for their challenge to the district court's ruling. *See In re Estate of Heeter*, 113 N.M. 691, 694, 831 P.2d 990, 993 (Ct.App.), *cert. denied*, 113 N.M. 690, 831 P.2d 989 (1992). We therefore reject the Marketers' contentions regarding the denial of discovery.

## IV. CONCLUSION

28. We affirm the district court order enforcing the CIDs against the Marketers.

29. **IT IS SO ORDERED.**

APODACA, C.J., and BUSTAMANTE, J., concur.