The STATE EXCHANGE BANK, a banking corporation organized and existing under the laws of the State of Florida, Plaintiff-Appellee,

v.

R.F. HARTLINE and Mrs. R.F. Hartline, et al., Defendants-Appellants.

No. 81–5351.

United States Court of Appeals, Eleventh Circuit.

Dec. 20, 1982.

William A. Wehunt, Atlanta, Ga., Zuckerman, Spaeder, Taylor & Kolker, Michael R.

Smith and William W. Taylor, III, Washington, D.C., Zuckerman, Spaeder, Taylor & Evans, Coral Gables, Fla., for defendants-appellants.

Mahoney, Hadlow & Adams, Thomas M. Baumer, Baumer & Bradford, Jacksonville, Fla., John E. Norris, Lake City, Fla., for plaintiff-appellee.

Before RONEY and KRAVITCH, Circuit Judges, and TUTTLE, Senior Circuit Judge.

RONEY, Circuit Judge:

In four suits on promissory notes, defendants appeal the striking of their affirmative defenses, dismissal of their counterclaims, and entry of summary judgment for the plaintiff bank. Viewing these actions as well within the district court's discretion because of defendants' numerous violations of pretrial orders, we affirm.

The propriety of striking the affirmative defenses and counterclaims is the key to this decision. The defendants concede that without these defenses, the plaintiff bank is entitled to summary judgment on its promissory notes. They admit executing and defaulting on the notes.

A brief review of the proceedings illustrates why the district court took the rather drastic step of striking defendants' pleadings. In 1973 defendants agreed to purchase and lease cattle from various breeders. To finance these ventures, defendants obtained over $200,000 in loans from plaintiff bank. When defendants stopped paying on those loans, the bank filed suit on the promissory notes. It brought three actions in 1976 and one in 1977. In defense the borrowers alleged in effect that the bank had conspired with the breeders to defraud them by, among other things, providing fewer and inferior cattle than the agreement required. Defendants also counterclaimed against the bank and breeders for common-law and securities fraud.

After filing their affirmative defenses and counterclaims and removing the actions to federal court, defendants did little to further the litigation of their defenses and counterclaims, all that stood in the way of a judgment for plaintiff. Defendants did not begin to take discovery until February 1981, nearly four years after the bank filed its last action. Defendants apparently never served their counterclaims on any of the breeders named as counterdefendants.

Defendants disregarded many court orders. After the district court in 1977 ordered counsel to meet and arrive at a pretrial stipulation, the court found that defendants were to blame for the failure to hold a meeting. At that time, the court refused to impose sanctions as requested by the bank. The court warned defendants, however, that they were expected to comply literally with all future orders. The court had to threaten to strike their pleadings and grant them an extension of time before defendants finally filed a pretrial stipulation and designated the first of many local counsel.

The suits largely lay dormant over the next two years except that plaintiffs engaged in discovery. As with the filing of the pretrial stipulation, the discovery process featured unnecessary delay caused by defendants. Defendants Manfred and Theresa Rudy did not adequately answer interrogatories until after the court twice compelled them to respond, threatened them with dismissal of their counterclaim and required them to pay the attorney's fees incurred by plaintiff in seeking the court orders.

In January 1980 the court ordered the parties' counsel to confer and file a joint status report. Despite receiving an extension of time, joint defense counsel failed to attend a scheduled status conference. Indeed, he did not respond to the January order or to plaintiff's subsequent motion to strike defendants' pleadings until October, claiming incredibly that he had just then opened his mail from January and that he

thought he had withdrawn from the cases. Exercising great patience, the trial judge again refused to strike defendants' pleadings.

When defendants appointed new counsel, the judge once again extended the time for submission of a joint status report. He directed the attorney to appoint local counsel pursuant to court rule and to submit a legal memorandum concerning plaintiff's motion for summary judgment. Defense counsel failed to comply fully with any of the court's directions. He attempted to designate a local attorney for service of process but failed to abide by the applicable court rule. When his last minute effort to set up a meeting with the bank failed, he filed two days late a unilateral status report which the court deemed "frivolous" in light of the information requested. Although some delay may have been justified since counsel claimed not to have received the court order for over two weeks, he did not ask for an extension of time to file the requested legal memorandum until more than another month had passed.

Faced with these deficiencies, as well as the long history of delay attributable to defense counsel, the court in March 1981 finally struck the borrowers' affirmative defenses, dismissed their counterclaims, and entered summary judgment for the bank.

We have recited here enough, without going fully into detail, to illustrate the difference between this case, where we affirm the district court's actions, and *EEOC v. Troy State University*, 693 F.2d 1353 (11th Cir. 1982), in which we this day reverse a district court's dismissal of a suit.

■ As we said there, while the district court has broad powers under the Federal Rules of Civil Procedure to impose sanctions for a party's failure to abide by court orders, dismissal of an action with prejudice is a "sanction of last resort, applicable only in extreme circumstances." *EEOC v. First National Bank*, 614 F.2d 1004, 1007 (5th Cir.1980); *Emerick v. Fen-*

*ick Industries, Inc.*, 539 F.2d 1379, 1381 (5th Cir.1976); *Thomas v. United States*, 531 F.2d 746, 749 (5th Cir. 1976). Dismissal is generally reserved for cases of willful disobedience to court orders. *Compare Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 212, 78 S.Ct. 1087, 1095, 2 L.Ed.2d 1255 (1958) (dismissal reversed in part because of absence of bad faith) *with National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976) (dismissal affirmed because of presence of bad faith). Unlike *Troy State*, however, this case is replete with numerous unjustified violations of court orders despite judicial warnings of the consequences.

■ The Federal Rules expressly authorize a district court to dismiss a claim, including a counterclaim, or entire action for failure to prosecute or obey a court order or federal rule. Fed.R.Civ.P. 41(b)-(c). *See, e.g., Veazey v. Young's Yacht Sale & Service, Inc.*, 644 F.2d 475 (5th Cir. 1981). In addition to the federal rule, this power, as well as the power to strike a pleading, is inherent in a trial court's authority to enforce its orders and ensure prompt disposition of legal actions. *Link v. Wabash Railroad Co.*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734 (1962); *Marshall v. Southern Farm Bureau Casualty Co.*, 353 F.2d 737, 737 (5th Cir.), *cert. denied*, 384 U.S. 910, 86 S.Ct. 1352, 16 L.Ed.2d 363 (1966). *Cf.* 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1526 at 597 (1971) (defense may be stricken for failure to provide information required in pretrial order). An appellate court reviewing the exercise of this power is constrained by the abuse of discretion standard. *Link*, 370 U.S. at 633, 82 S.Ct. at 1390.

■ Defendants argue primarily that the delays and violations of court orders are attributable solely to defense counsel, not to defendants themselves. We acknowledge the appellate opinions suggesting that trial

courts should hesitate to penalize litigants for the transgressions of their lawyers. *See, e.g., Silas v. Sears, Roebuck & Co.,* 586 F.2d 382, 385 (5th Cir.1978); *Jackson v. Washington Monthly Co.,* 186 D.C.App. 288, 569 F.2d 119, 123–24 (1977). We have viewed dismissal as particularly harsh when the parties whose interests are at stake are not the named plaintiffs who have complete control of the litigation. *See EEOC v. Troy State, supra.* The Supreme Court has, however, expressly condoned the dismissal of a suit for delay caused by counsel chosen by the party. *Link v. Wabash Railroad Co.,* 370 U.S. at 633–34, 82 S.Ct. at 1390. The appellate decisions that have reversed dismissals based on failure of counsel have generally dealt with relatively short periods of delay and few violations of court orders that may understandably have escaped the attention of the clients. *See, e.g., Gonzalez v. Firestone Tire & Rubber Co.,* 610 F.2d 241 (5th Cir.1980) (dismissal less than ten months after suit filed; only one court order disobeyed along with a single inadvertent failure to attend a pretrial conference); *Flaska v. Little River Marine Construction Co.,* 389 F.2d 885 (5th Cir.) (dismissal eight months after answer filed), *cert. denied,* 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed.2d 1387 (1968); *Durham v. Florida East Coast Railway Co.,* 385 F.2d 366 (5th Cir.1967) (dismissal less than ten months after suit filed). In this case, however, the large sum of money involved, the lengthy period during which the suit remained pending without going to trial, and the changes of counsel suggest that defendants must have acquiesced in the delays that their attorneys were improperly causing.

In addition to challenging the striking of their pleadings and the consequent grant of summary judgment for the bank, defendants dispute the award to the bank of $49,-500 in attorney's fees. The promissory notes provided for attorney's fees in the event the borrowers defaulted, and the sum awarded equals the amount deemed reasonable in affidavits provided by the bank. Defendants filed no counter-affidavits.

Considering that the only evidence supported the award, we detect no abuse of discretion.

AFFIRMED.