708 P.2d 327

**Thomas Ray NEWSOME, Jr., Petitioner-Appellant,**

v.

**Tom J. FARER, President University of New Mexico Respondent-Appellee.**

**No. 15647.**

Supreme Court of New Mexico.

Oct. 30, 1985.

Thomas Ray Newsome, Jr., pro se.

Gregory D. Huffaker, Jr., Poole, Tinnin & Martin, a P.C., Albuquerque, for respondent-appellee.

## OPINION

WALTERS, Justice.

The suit below was dismissed by the trial court. Appellant states that on appeal he "challenges":

1. The court's refusal to consider and decide the issues presented in the motion creatively entitled "Writ of Habeas Data."

2. The court's adopted findings of fact, embodied in its dismissal order of 29 August 1984.

3. The court's refusal to conduct the scheduled Habeas Data hearing, and to clarify its dismissal order.

4. The court's denial of his motion for a Vaughn Index.

5. The court's refusal to relieve Newsome from the order of dismissal because of the misconduct of defense counsel.

Despite appellant's identification of those matters as appealable issues (and his accompanying brief containing, with table of contents and appendices, 109 pages, as well as his unauthorized, untimely addendum of 16 pages of additional authorities), we consider it necessary to state at the outset those which matters we are persuaded are *not* issues for consideration.

Notwithstanding plaintiff's prolix exhortations, this case is not in a posture that calls for a discussion of legal philosophies or precepts concerning a trial judge's demeanor or his obligation to "seek the truth" during the course of a trial. No comment is required on the purpose, application, scope or extent of the Administrative Procedures Act. It does not present us with necessity for a decision on what evidence is discoverable or admissible in Freedom of Information lawsuits, or the purpose for which the Freedom of Information Act was passed, or whether any such extraordinary writ as one for "habeas data" exists. Nor is there any justiciable issue in this appeal concerning the University's duty to maintain specific records according to any specific system.

The sole issue on this appeal is the propriety of the trial court's dismissal upon plaintiff's deliberate failure or refusal to follow the discovery procedures directed by the court, made upon plaintiff's petition for production of certain University records.

We are urged to reverse the dismissal on grounds that the sanction was too harsh; that it was imposed upon one who appeared *pro se* below (and does so here, as well); that appellant satisfactorily explained his non-appearance to inspect the documents ordered to be produced; and that the trial court's findings concerning his non-compliance are clearly erroneous.

■■ We dispose of the last point first. It is not necessary under NMSA 1978, Civ. P.Rule 41(b) (Repl.Pamp.1980), that the court make findings and conclusions to support an order of dismissal for failure to comply with a court order. 5A J. Moore and J. Lucas, Moore's Federal Practice ¶ 52.08 (2d ed. 1985). Even though findings were entered, the order of dismissal was not an adjudication on the merits; it was a sanction imposed for the unexcused arrogance of petitioner's position that, as he states in his brief, he "was free to

ignore" attendance at the time and place of production of documents ordered by the court to be produced.

The chronology of this case discloses that Newsome filed a suit on January 10, 1984, presumably in Mandamus and pursuant to the New Mexico Inspection of Public Records Act, NMSA 1978 §§ 14–2–1, 14–2–3. Thereafter, he wrote two letters to the then-President of the University requesting, the first time, certain record-management and written policy records and "all indexes pertaining to the within named public records," and in the second request, all records concerning an internal audit of the University basketball "scandal." The University offered to produce for inspection all documents examined by the auditors. Newsome, instead, moved for a "Vaughn Index" (a tool to identify discovery objections that has been used in some federal courts for cases arising under the Freedom of Information Act). The motion was denied.

On March 22, 1984, the court ordered the University officials to produce all they had offered, plus those records requested in petitioner's pleadings, or to index and give reasons for not producing any documents requested by Newsome—an order not completely unlike the "Vaughn Index" procedure.

The University advised Newsome of the place and time and general nature of the records to be produced and requested that he give notice if he wished to postpone inspection to another mutually agreeable time. Newsome neither answered the University's letter nor appeared at the production of documents.

At a subsequent hearing Newsome was asked why he had not attended the production of documents. He responded that there was no evidence that the University had produced the documents listed in its certificate of compliance and that he knew the records offered to be produced were not the ones he had requested. Following that hearing, the court issued a letter-order to Newsome requiring that he respond within 15 days and set out why his suit should not be dismissed in view of his

"failure to take advantage of the disclosures that were to be made as a result of the Order of March 22."

Newsome's 107-page reply, tendered *18* days from the date of the court's letter, did not explain why he did not attend production of the documents requested. Instead, it attacked the accuracy and veracity of the University's Certificate of Compliance and supporting affidavit, complained about the court's denial of the "Vaughn Index" motion, and asserted that the University's refusal to waive its affirmative defenses rendered its partial disclosure of documents meaningless. Newsome's written response further asserted that "Petitioner exercised his best judgment that if he accepted partial disclosure of such records as a matter of *grace*, rather than as a legal *right*, it would be an issue 'capable of repetition, yet evading review,' that requires an authoritative judicial determination, *as a matter of law.*" (Emphasis in Newsome's response.)

Thereafter, Newsome was given three additional opportunities at three separate hearings to show cause why his suit should not be dismissed. At the first of those hearings, the University moved for dismissal pursuant to Rule 41(b). At each hearing, Newsome reiterated his initial argument that he believed the production of documents would not contain all of the material he desired, and that he was not willing to "waste his time" on it.

On August 29, 1984 the trial court issued its order, dismissing the suit with prejudice, "pursuant to Civ.P.R. 41(b) of the rules of Civil Procedure and the court's inherent authority."

From Newsome's voluminous briefs we glean two basic arguments relevant to the issue of dismissal: First, he claims that he is not guilty of refusing to comply with the court's order because: (1) his attendance at document production was optional or excusable, and (2) he fully complied with the trial court's letter-order to explain his absence. Second, he argues that even if his conduct amounted to non-compliance, the trial court

abused its discretion in dismissing the case with prejudice.

## A. Newsome's Non-Compliance

It was and is Newsome's position that without a "Vaughn Index", neither he nor the court could determine exactly which documents were not produced or whether the University was justified in withholding them. He also implies that a "Vaughn Index" would have simplified the task of inspecting those documents that were produced. For these reasons, says Newsome, he "made a judgment call" and "declined to go on a wild goose chase."

This argument demonstrates Newsome's insistence that only he would dictate the progress of this action. Even if there should exist a legal basis for Newsome's "Vaughn Index" motion, his response to the court's denial of that motion should not have been to ignore the court's order on production. A litigant is not free to disregard an order of the court simply because he disagrees with it.

Newsome also excuses his absence from the production of documents on the ground that the court's order required him to pay the costs of production. He did not raise that objection below; it cannot be raised here, particularly since the University subsequently volunteered to produce the great bulk of the records free of charge.

Finally, Newsome asserts his belief that he was not required to attend production of documents because the court did not affirmatively order him to do so. We view this argument as a disingenuous attempt to invoke special privilege because of his *pro se* status. He did not claim ignorance or misunderstanding in the trial court, and the assertion here conveniently overlooks the rule that a *pro se* litigant must comply with the rules and orders of the court, enjoying no greater rights than those who employ counsel. *State ex rel. State Highway Commission v. Sherman*, 82 N.M. 316, 319, 481 P.2d 104, 107 (1971); *Wilson v. Albuquerque Board of Realtors*, 82 N.M. 717, 719–20, 487 P.2d 145, 147–48 (Ct.App.

1971). Although *pro se* pleadings are viewed with tolerance, *Birdo v. Rodriguez*, 84 N.M. 207, 209, 501 P.2d 195, 197 (1972), a *pro se* litigant, having chosen to represent himself, is held to the same standard of conduct and compliance with court rules, procedures, and orders as are members of the bar.

Production of documents was ordered upon Newsome's request. Even though one may not be legally trained, common sense dictates that when a party petitions the court to enforce a right to inspect public records, and the court responds by ordering that requested documents be produced, the petitioner is not then free to disregard the arrangements made to comply with the relief ordered, simply because the court did not affirmatively direct the petitioner to attend. Certainly it does not require legal training or even any great degree of intelligence to understand that documents are not ordered to be produced in a vacuum. Production necessarily implies inspection. Newsome's *pro se* status does not require us or the trial court to assume he must be led by the hand through every step of the proceeding he initiated. We reject his claims of compliance or excuse therefrom because of his layman's ignorance.

## B. Exercise of Discretion

Did the trial court abuse its discretion in failing to find good faith compliance by petitioner or excuse for not complying?

"Trial courts have inherent power to manage their own affairs * * * to achieve the orderly and expeditious disposition of cases." *Miller v. City of Albuquerque*, 88 N.M. 324, 329, 540 P.2d 254, 259 (Ct.App.), *cert. denied*, 88 N.M. 318, 540 P.2d 248 (1975); *See Birdo v. Rodriguez*, 84 N.M. at 210, 501 P.2d at 198. Absent a rule adopted by the Supreme Court, courts may infer authority to regulate procedure. *State v. Doe*, 99 N.M. 460, 463, 659 P.2d 912, 915 (Ct.App.1983). "In all cases not provided for by rule, the district courts may regulate their practice in any manner

not inconsistent with these rules." NMSA 1978, Civ.R.P. 83 (Repl.Pamp.1980).

New Mexico trial courts also have the power to dismiss cases *sua sponte* for disregard of court orders directed toward case management. *Beverly v. Conquistadores, Inc.*, 88 N.M. 119, 121, 537 P.2d 1015, 1017 (Ct.App.), *cert. denied*, 88 N.M. 318, 540 P.2d 248 (1975). Such dismissal is discretionary with the court and therefore subject to review "only to determine whether there was an abuse of discretion." *Id.* An abuse of discretion will be found when the trial court's decision is clearly untenable or contrary to logic and reason. *Id.* 88 N.M. at 122, 537 P.2d at 1018; *Three Rivers Land Co. v. Maddoux*, 98 N.M. 690, 694, 652 P.2d 240, 244 (1982).

In this case, the court expressly grounded its order on both its inherent power to dismiss *sua sponte* and upon Rule 41(b) of the New Mexico Rules of Civil Procedure. The basis for applying Rule 41(b) (for "failure of the plaintiff to ... comply with * * * any order of court, a defendant may move for dismissal of an action * * * * * " NMSA 1978, Civ.P.R. 41(b) (Repl.Pamp.1980)), is the same as for the trial court's *sua sponte* dismissal. *See, e.g., Link v. Wabash Railroad Company*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *Stanley v. Continental Oil Co.*, 536 F.2d 914, 916–17 (10th Cir.1976).

The United States Supreme Court has construed the parallel Fed.Civ.P.Rule 41(b) as an *express recognition* of the courts' inherent power to dismiss *sua sponte. Link v. Wabash*, 370 U.S. at 629–30, 82 S.Ct. at 1388, 8 L.Ed.2d at 737–38. Accordingly, any review of a dismissal under Rule 41(b) is circumscribed by the abuse of discretion standard. *State Exchange Bank v. Hartline*, 693 F.2d 1350, 1352 (11th Cir. 1982) (citing *Link*, 370 U.S. at 633, 82 S.Ct. at 1390, 8 L.Ed.2d at 739). Dismissal of a suit pursuant to Rule 41(b) for failure to comply with an order of court will not be disturbed absent a showing that dismissal was without logic or reason, or that it is clearly unable to be defended.

Newsome's arguments relating to abuse of discretion are that the University's motion to dismiss was not in writing; Newsome was deprived of notice and an opportunity to be heard; and the order of dismissal was excessively harsh under the circumstances.

■ The first two reasons lack both a factual and legal basis. As a general rule, notice of a motion made during a hearing is unnecessary and the motion need not be made in writing. 9 C. Wright & A. Miller, Federal Practice and Procedure § 2372 (1971); *Link v. Wabash*, 370 U.S. at 632, 82 S.Ct. at 1389–90, 8 L.Ed.2d at 739. The New Mexico cases on which Newsome relies for his due process arguments are inapposite in that they deal with Rule 41(e) which contemplates a written motion and a hearing thereon. *See* NMSA 1978, Civ.P.R. 41(e) (Repl.Pamp.1980); *Dunham-Bush, Inc. v. Palkovic*, 84 N.M. 547, 549, 505 P.2d 1223, 1225 (1973); *State ex rel. Reynolds v. Molybdenum Corporation of America*, 83 N.M. 690, 697, 496 P.2d 1086, 1093 (1972). Rule 41(b) contains no such requirement. Moreover, Newsome was given five opportunities to explain why the court should not dismiss his suit because of his failure to attend document production. He admits to having notice of the possibility of dismissal before the second such opportunity. It is inaccurate to contend he was denied notice and an opportunity to be heard.

■ Dismissal with prejudice is a drastic sanction that is used sparingly. *Beverly v. Conquistadores*, 88 N.M. at 121, 537 P.2d at 1017; *Birdo v. Rodriguez*, 84 N.M. at 210, 501 P.2d at 198. For his second argument, Newsome relies on two corollaries to this principle as expressed in the federal courts. The first is that a dismissal with prejudice for failure to comply with a court order is appropriate only where noncompliance has been willful. *E.E.O.C. v. Troy State University*, 693 F.2d 1353, 1357 (11th Cir.1982), *cert. denied*, 463 U.S. 1207, 103 S.Ct. 3538, 77 L.Ed.2d 1388 (1983); *State Exchange Bank v. Hartline*, 693 F.2d at 1352. Thus, "[a] party's simple negligence or other action grounded in a

misunderstanding of a court order does not warrant dismissal." *E.E.O.C. v. Troy State*, 693 F.2d at 1357 (citation omitted).

 Misunderstanding a court order may excuse non-compliance if the order is vague or ambiguous. *Id.* But when the order, as here, was clear and specific, and petitioner was notified of the time and place for inspection of the documents produced, and petitioner deliberately elected not to appear, we have no difficulty deciding that Newsome's conduct was willful rather than negligent or the result of misunderstanding.

> [A] willful violation of a [court order] is any conscious or intentional failure to comply therewith, as distinguished from accidental or involuntary non-compliance, and ... no wrongful intent need be shown to make such a failure willful. [Citation omitted.]

*United Nuclear Corporation v. General Atomic Company*, 96 N.M. 155, 202, 629 P.2d 231, 278 (1980), *appeal dismissed*, 451 U.S. 901, 101 S.Ct. 1966, 68 L.Ed.2d 289 (1981). In *United Nuclear*, we applied this test to a party's refusal to comply with court orders compelling discovery pursuant to NMSA 1978, Civ.P.Rule 37 (Repl.Pamp. 1980). It is applicable here as well. Newsome chose not to "waste his time."

 Newsome relies, in the second place, on the federally-developed principle that dismissal with prejudice is generally proper only where less drastic sanctions cannot accomplish the court's underlying purpose. *E.g., E.E.O.C. v. Troy State*, 693 F.2d at 1358; *State Exchange Bank v. Hartline*, 693 F.2d at 1352. We have not expressly held that a New Mexico court must consider lesser sanctions before dismissing a case with prejudice. Nonetheless, the mandate that the sanction be used sparingly and reserved for extreme circumstances necessarily implies that it is not to be imposed lightly. *See Beverly*, and federal cases cited therein. But as one federal court has observed:

> There are of course a wide variety of other sanctions short of dismissal * * The [trial court], however, need not ex-

haust them all before finally dismissing a case. The exercise of his discretion to dismiss requires only that possible and meaningful alternatives be reasonably explored.

*Von Poppenheim v. Portland Boxing and Wrestling Comm'n*, 442 F.2d 1047, 1053–54 (9th Cir.1971), *cert. denied*, 404 U.S. 1039, 92 S.Ct. 715, 30 L.Ed.2d 731 (1972).

 Newsome's rigidity in this case not only made normal progress difficult, it prevented any progress at all. *Cf. id.* at 1053. He intentionally ignored a court order designed to narrow the issues and move the case forward. He refused to attend ordered document production and did not notify the court or the University of his intention not to attend. He offered no satisfactory explanation for his conduct even after he was warned of its possible consequences. He responded late and inadequately to the court's letter order and answered inadequately at all opportunities afforded him to explain his conduct. On appeal he continues to insist that before he is required to attend document production, the trial court must first determine in advance whether the documents not produced have been properly withheld. It is difficult to imagine a lesser sanction, in the face of petitioner's obdurate position, that would sustain the trial court's authority to control the course of litigation. *See United Nuclear*, 96 N.M. 155, 239, 629 P.2d 231, 317 (1980), where we approved the language of *Perry v. Golub*, 74 F.R.D. 360, 365 (N.D. Ala.1976), that in an age of burgeoning protracted litigation, the court need not shrink from harsh sanctions when warranted by a party's disregard of the "basic tenet * * * that a party is required to obey a Court order."

> Somewhere along the line, the rights of ... defendants to be free from costly and harassing litigation must be considered. So too must the time and energies of our courts and the rights of would-be litigants awaiting their turns to have other matters resolved. The exact point on that line is incapable of exact

definition, but we are satisfied that the present case went beyond it.

*Von Poppenheim,* 442 F.2d at 1054.

The order of dismissal is AFFIRMED.

SOSA, Senior Justice, and STOWERS, J., concur.