This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**PNC BANK, NATIONAL ASSOCIATION, Successor in Interest to NATIONAL CITY REAL ESTATE SERVICES, LLC, Successor by Merger to NATIONAL CITY MORTGAGE, INC., formerly known as NATIONAL CITY MORTGAGE CO., doing business as COMMONWEALTH UNITED MORTGAGE CO.,**

       Plaintiff-Appellee,

v.                             **NO. A-1-CA-35755**

**STEVEN J. VALDEZ and MICHA G. VALDEZ,**

       Defendants-Appellants,

and

**MARY M. JIMENEZ a/k/a MARY MARTHA JIMENEZ; LISA GRIEGO TAPIA; PALISADES COLLECTION, assignee of HSBC; RICHARD JEROME TAPIA; SUNWEST BANK RIO ARRIBA; SANTA FE COUNTY TREASURER; and THE STATE OF NEW MEXICO DEPARTMENT OF TAXATION & REVENUE,**

       Defendants.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**David K. Thomson, District Judge**

Brownstein Hyatt Farber Shreck, LLP
Eric R. Burris
Cassandra Malone
Albuquerque, NM

for Appellee

Steven J. Valdez
Micha G. Valdez
Santa Fe, NM

Pro Se Appellants

## MEMORANDUM OPINION

**BOHNHOFF, Judge.**

{1}	Defendants Steven J. and Micha G. Valdez (the Valdezes) appeal the district court's order granting Plaintiff PNC Bank, National Association (PNC), summary judgment in an action to foreclose on property in Santa Fe County, New Mexico (the Property). The district court found that PNC presented sufficient evidence to make a prima facie showing it has standing and that the Valdezes failed to demonstrate the existence of any genuine issue of material fact. The district court granted foreclosure and also awarded an in personam judgment against the Valdezes who, while they claimed an interest in the Property, were not a party to the defaulted loan. We affirm the foreclosure but remand for entry of a corrected judgment.

## BACKGROUND

{2} On November 21, 2001, Mary M. Jimenez (Jimenez) signed a promissory note obligating her to pay $90,000 with interest to National City Mortgage Co., doing business as, Commonwealth United Mortgage Company (NCMC). On the same day, she mortgaged the Property to NCMC as collateral for the loan.

{3} In December 2006, Jimenez quitclaimed her interest in the Property to the Valdezes. The Valdezes claim they began making payments on the note at this point.

{4} In the years following Jimenez's execution of the note and mortgage, NCMC underwent several corporate changes. On January 1, 2005, NCMC changed its name to National City Mortgage Inc. (NCMI). On January 1, 2007, NCMI merged into National City Real Estate Services, LLC (NCRES). On November 6, 2009, NCRES merged into PNC. There is no evidence in the record that the note was ever endorsed or that the mortgage was ever assigned.

{5} Jimenez passed away in January 2012, and payments on the note stopped shortly thereafter, The loan went into default and on December 3, 2012, PNC filed a complaint seeking foreclosure on the Property and judgment against Jimenez.

{6} PNC subsequently filed two affidavits regarding the fact that the original of the note given by Jimenez could not be found. The first affidavit from Jeannie Lawson describes the steps taken to locate the note and concluded its location could not be

3

determined. Lawson stated that the original note was last in PNC's possession on July 20, 2012, two-and-a-half years after the name changes and mergers had been completed. Lawson stated that "PNC should be currently in possession of the Original Note if it had not been lost, and did not lose possession of the Original Note due to a lawful seizure." She further stated "that PNC will hold the obligor(s) of the Original Note harmless and shall indemnify obligor(s) from any loss they may incur by reason of a claim by another person to enforce the Original Note." The second affidavit, from Janice E. Kiwacka, described the physical search for the note and the review of the custody records.

{7} PNC moved for summary judgment against the Valdezes. PNC argued it had the right to enforce the note because it satisfied the elements required to enforce a lost note under NMSA 1978, Section 55-3-301 (1992) and Section 55-3-309 (1992). PNC contended it had a right to enforce the note "through its unbroken chain of predecessors by merger" because the original note had not been transferred or seized, and despite reasonable efforts, PNC was unable to locate the original note. PNC attached an affidavit from Cindy E. Dooley to the motion for summary judgment which provided evidence of PNC's standard practice of recording the transfer or seizure of a note. The Dooley affidavit also provided testimony regarding the name

4

changes and mergers NCMC went through after Jimenez executed and gave it the note and mortgage.

{8}     In their response to the summary judgment motion, the Valdezes, who were represented by counsel at the time, argued that PNC lacked standing. The Valdezes argued PNC was required to prove it was in possession of the note when it was lost and, because PNC did not know exactly when the note was lost, it could not possibly carry this burden of proof. The Valdezes also argued PNC was not a party to the original mortgage and note and therefore could not enforce them. Further, they argued that because another entity lost the note before PNC came into possession, PNC could not enforce the note.

{9}     The district court granted PNC's motion for summary judgment and foreclosed the Valdezes' interest in the Property. The district court also granted an in personam deficiency judgment against the Valdezes, allowing PNC to recover against the Valdezes if the sale of the Property did not satisfy the loan and additional costs awarded. The Valdezes appealed.

**DISCUSSION**

**A.     The Valdezes Have Failed to Preserve and Develop Their Arguments**

{10}    In their pro se appellate brief, the Valdezes claim a violation of due process occurred, there was "foreclosure abuse[]," a "double breach capitalization" of "slave

master contract agreements," and discrimination of illiteracy. The Valdezes also argue PNC violated "[a]ntitrust laws," committed "steering," double-dipped, commingled, and dealt unfairly. "[O]n appeal, the party must specifically point out where, in the record, the party invoked the court's ruling on the issue. Absent that citation to the record or any obvious preservation, we will not consider the issue." *Crutchfield v. N.M. Dep't of Taxation & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273.

{11}    The Valdezes have failed to indicate where in the record they invoked a ruling from the district court on any of these arguments. Further, based on our own independent review of the record we have determined that these arguments were not raised with the district court. "To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 24, 314 P.3d 688 (internal quotation marks and citation omitted). "The primary purposes for the preservation rule are: (1) to specifically alert the district court to a claim of error so that any mistake can be corrected at that time, (2) to allow the opposing party a fair opportunity to respond to the claim of error and to show why the district court should rule against that claim, and (3) to create a record sufficient to allow this Court to make an informed decision regarding the contested issue." *Kilgore v. Fuji Heavy*

*Indus. Ltd.*, 2009-NMCA-078, ¶ 50, 146 N.M. 698, 213 P.3d 1127, *remanded on other grounds*, 2010-NMSC-040, 148 N.M. 561, 240 P.3d 648. Therefore, even assuming we could understand these arguments, we conclude that the Valdezes failed to preserve these arguments and for that reason we decline to consider them on appeal. *See Clayton v. Trotter*, 1990-NMCA-078, ¶ 12, 110 N.M. 369, 796 P.2d 262 (observing that this Court will review pro se arguments to the best of its ability, but cannot respond to unintelligible arguments).

{12}     The Valdezes also allude briefly and in passing to their standing and lost note contentions. These arguments were preserved below. However, they are not adequately developed on appeal. While the Court views pro se pleadings with a tolerant eye, pro se litigants nevertheless are "held to the same standard of conduct and compliance with court rules, procedures, and orders as are members of the bar." *Newsome v. Farer*, 1985-NMSC-096, ¶ 18, 103 N.M. 415, 708 P.2d 327. Appellants before this Court are required to provide "a statement of the applicable standard of review, the contentions of the appellant, and a statement explaining how the issue was preserved in the court below, with citations to authorities, record proper, transcript of proceedings, or exhibits relied on" for each issue presented. Rule 12-318(A)(4) NMRA. Failure to meet these requirements results in inadequately briefed issues and to rule on such issues, the Court would have to develop the arguments itself. *See Elane*

*Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53. To do so would create "a substantial risk of error" and "[i]t is of no benefit either to the parties or to future litigants for this Court to promulgate case law based on our own speculation rather than the parties' carefully considered arguments." *Id.* This Court will not guess at what the Valdezes' arguments might be and we decline to review them. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what [a party's] arguments might be."); *see also In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329. In the absence of thorough development of the arguments, we are particularly cautious in addressing issues of first impression, such as those present here concerning a lender's standing pursuant to 12 U.S.C. § 215a(e) (West 2018) to enforce a note following name changes and mergers as well as a lender's right to enforce a lost note pursuant to Section 55-3-30. For all of these reasons, we decline to address the two arguments the Valdezes preserved below.

**B.    Standing as Assignee**

{13}    The Valdezes argue "the mortgage is sold on the wholesale market it is sold and paid in full, over and over again as it is literally bundled in portfolios of value moving faster than the speed of light in digitization." While unclear, this appears to be an argument that PNC no longer has the note because it was assigned or PNC is

otherwise a third party to the note, which is an argument preserved below. However, the Valdezes fail to point to any evidence in the record indicating the note was ever assigned. On the contrary, the evidence reflects that no assignments occurred during the name change and merger transactions from which PNC emerged. Further, PNC provided testimony that had the note been transferred, it would have been PNC's standard practice to make a record to that effect. Despite a reasonable search, PNC was unable to find any records indicating a transfer or seizure of the note. PNC presented sufficient evidence to make a prima facie showing no assignment took place, *see Savinsky v. Bromley Grp., Ltd.*, 1987-NMCA-078, ¶ 2, 106 N.M. 175, 740 P.2d 1159, and the Valdezes presented no evidence with which to establish a disputed question of fact regarding an assignment. *See* Rule 1-056(C) NMRA; *Firstenberg v. Monribot*, 2015-NMCA-062, ¶ 47, 350 P.3d 1205. We therefore affirm the district court's finding that PNC presented sufficient evidence to establish standing to enforce the note despite claims the note had been assigned.

## C.    In Personam Judgment Against the Valdezes

{14}    In our review of the record and the district court's final judgment, we noted the in personam deficiency judgment entered against the Valdezes including "the amount of $101,241.25" comprised of unpaid principal, accrued and unpaid interest, late charges, escrow advances, other unpaid fees, recordation fees, inspection fees, and

outstanding corporate advances. PNC did not request this relief in its original complaint, in its first amended complaint, or argue for it on appeal. The Valdezes never raised this issue in their docketing statement or appellate brief. However, in supplemental briefing that we requested, PNC effectively acknowledged that a mistake was made in the judgment it submitted to the district court, and it concedes it is not entitled to an in personam judgment against the Valdezes because they were not original parties to the note and the note was never transferred to them. PNC has clarified that it seeks only in rem foreclosure against the Valdezes and that any in personam judgment should be against only Jimenez or her estate. *See generally State v. Nunez*, 2000-NMSC-013, ¶ 78, 129 N.M. 63, 2 P.3d 264 (explaining actions in rem resolve interests, claims, titles, and rights in property while actions in personam are directed at persons). As PNC does not dispute that the in personam relief against the Valdezes was granted in error, we will remand to the district court for the entry of a corrected judgment vacating the in personam judgment against the Valdezes.

**CONCLUSION**

We affirm the district court's judgment foreclosing the Valdezes' interest in the Property and remand for entry of a corrected judgment that vacates the in personam judgment against them.

{15}    **IT IS SO ORDERED.**

10

 

                                                         _____

                                                         **HENRY M. BOHNHOFF, Judge**

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Judge**

_____

**J. MILES HANISEE, Judge**