# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2019-NMCA-071

Filing Date: August 23, 2019

No. A-1-CA-36369

**NEW MEXICO
CONSTRUCTION INDUSTRIES
DIVISION AND MANUFACTURED
HOUSING DIVISION,**

Petitioner-Appellee,

v.

**RABBI Y'HOSHUA COHEN,**

Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**Angie K. Schneider, District Judge**

Released for Publication December 17, 2019.

Hector H. Balderas, Attorney General
Sally J. Galanter, Special Assistant Attorney General
Albuquerque, NM

for Appellee

Rabbi Y'Hoshua Cohen
Alto, NM

Pro Se Appellant

## OPINION

**M. ZAMORA, Chief Judge.**

**{1}** Respondent Y'Hoshua Cohen appeals the district court's order requiring him to allow investigators, acting under the authority of the New Mexico Construction Industries and Manufactured Housing Division (the Division), to enter his property to inspect for code violations. Respondent, pro se, argues, among other things, that the order violates his Fourth Amendment right to be free from unreasonable searches and

seizures. Concluding that an administrative search warrant supported by probable cause was required to conduct the search of Respondent's premises, we reverse and remand with instructions to the district court to issue findings determining whether probable cause has been shown to support the issuance of an administrative search warrant.

**BACKGROUND**

**{2}**     Respondent's property is located in Alto, New Mexico. Evidence presented at trial demonstrated that Respondent, while he also lived there, rented out parts of his property as "apartments" to tenants. At the heart of this case is whether Respondent conducted new construction without a permit on his property to create these "apartments," contrary to 14.5.2.8(A) NMAC, entitled "Permits required."

**{3}**     The Division is charged with adopting and enforcing codes and standards for construction. NMSA 1978, § 60-13-1.1 (1989). The Division received two written complaints regarding Respondent's property. It received a letter from an attorney on behalf of Jennifer Wright, a former tenant of Respondent, regarding the unsafe conditions of Respondent's property. Ms. Wright's affidavit, attached to the letter, stated she had significant health issues from renting from Respondent, including headaches and nausea she attributed to a swamp gas smell and either no or inadequate venting in the home. The attorney's letter requested that the Division "take whatever action appropriate under your authority to immediately inspect and determine whether the apartments are safe for occupancy." The Division also received a letter from the planning director of Lincoln County, Curt Temple, expressing concern with Respondent's property. Mr. Temple wrote that the Lincoln County planning office had received complaints for several years about Respondent's property and that the "complaint has always been about the multiple additions that have occurred on the property without proper permits, or inspections." Mr. Temple also asked that the Division inspect the property to ensure Respondent was in compliance with the building code.

**{4}**     Soon thereafter, the Division's inspectors attempted to inspect the property to look for code violations, but Respondent denied access. The Division then issued an order requiring Respondent to schedule an inspection. The order stated that the Division received a complaint alleging that Respondent had constructed additions to his home without obtaining permits and that the additions are commercially leased or rented. Respondent did not permit the inspection and instead filed a petition for a writ of mandamus in the First Judicial District. The First Judicial District Court granted the Division's motion to quash the petition, ordering the case dismissed with prejudice and finding that the Division had the statutory authority to conduct an inspection and pursue any related relief.

**{5}**     The Division then filed a petition in the Twelfth Judicial District seeking a court order to enforce its "administrative order" demanding entry to inspect Respondent's property. The Division asserted that it had a right to enter the property to inspect for violations based on NMSA 1978, Section 60-13-42(A) (2011), which provides in part: "A

state certified inspector may, during reasonable hours, enter any building or go upon any premises in the discharge of the inspector's official duties for the purpose of making an inspection of work performed or for the purpose of testing any installation authorized within the jurisdiction of the inspector's trade certification."

{6}     Respondent filed an answer to the petition in which he argued, in part, that the Division could not simply secure an order from the district court to enforce its administrative order and that under the Fourth Amendment, a search warrant based on probable cause was required. The district court ultimately held a trial on the merits where the Division presented witness testimony and introduced exhibits into evidence. Omar Halama, the Division's compliance officer, Thomas Maese, the Division's chief inspector, and Clay Bailey, LP Gas Bureau Chief, each testified about complaints the Division had received and each of their fruitless efforts to obtain consent to search Respondent's property. For the presentation of his case, Respondent testified by way of making a statement and represented that there had not been any new construction since he purchased the property.

{7}     In its oral findings, the district court stated that it was basing its findings and conclusions "on the totality of what was submitted." The district court issued a written "Trial Order" (order) directing that the Division would inspect the property within twenty days of the order. In it, the district court made the following findings: (1) the Division has an obligation to conduct an investigation upon receipt of complaints as to life and property safety, (2) the Division has the statutory authority and the statutory right to conduct an inspection and to pursue any relief based on its statutory duty to protect life and property safety, and (3) the Division has a statutory duty to protect life and property by ensuring code compliance. Otherwise, the district court made no findings of fact.

## DISCUSSION

### I.     The Fourth Amendment

{8}     The primary question before us is whether the Division can enforce its administrative order statutorily or whether an administrative search warrant is required. Respondent argues that the district court order permitting the Division to search his property violates his Fourth Amendment rights because it is a "nonconsensual, warrantless, administrative" entry. Quoting *Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 844 (10th Cir. 2005), Respondent contends that a search warrant was required for the Division to search his property because "New Mexico's interest in safeguarding the well-being of the public by prohibiting unsafe construction does not necessarily equate with a need for nonconsensual, warrantless, investigative entries."

{9}     In response, the Division argues that the Fourth Amendment is not implicated by a court order to inspect a building when no entry or inspection occurred without judicial authorization. Thus, the Division contends that the district court did not err in ordering the search to take place. Moreover, the Division argues that even if the Fourth

Amendment does apply, warrantless entry is permitted because the case falls into an exception to the administrative search warrant requirement.

## A.      Standard of Review

**{10}**    "We review any factual questions under a substantial evidence standard and . . . review the application of the law to those facts, making a de novo determination of the constitutional reasonableness of a search or seizure." *State v. Sewell*, 2009-NMSC-033, ¶ 12, 146 N.M. 428, 211 P.3d 885 (alteration, internal quotation marks, and citations omitted); *see State v. Williamson*, 2009-NMSC-039, ¶ 28, 146 N.M. 488, 212 P.3d 376 (explaining that in the context of a warrantless search, we review the lower court's determination de novo). Whether a warrant is required by the Fourth Amendment and whether an exception to the warrant requirement applies require a de novo review. *See State v. Vargas*, 2017-NMSC-029, ¶ 16, 404 P.3d 416 (reviewing the Fourth Amendment argument de novo); *State v. Trudelle*, 2007-NMCA-066, ¶ 28, 142 N.M. 18, 162 P.3d 173 (applying a de novo standard of review to the question of whether exigent circumstances supported warrantless entry).

## B.      Under the Fourth Amendment, the Division's Search Required an Administrative Search Warrant Supported by a Finding of Probable Cause

**{11}**    The Construction Industries Licensing Act (the Act), NMSA 1978, §§ 60-13-1 to -59 (1967, as amended through 2019), charges the Division with "promot[ing] the general welfare of the people of New Mexico by providing for the protection of life and property by adopting and enforcing codes and standards for construction, alteration, installation, connection, demolition and repair work." Section 60-13-1.1. The New Mexico Construction Code requires a permit for any building or structure. 14.5.2.8(A) NMAC ("[N]o building or structure shall be erected, constructed, enlarged, altered, repaired, moved, improved, removed, converted or demolished, no electrical wiring, plumbing or mechanical work and LP gas work as defined and described in the applicable New Mexico construction codes for those trades, may be installed, repaired or maintained in or on such building or structure, unless the applicable permit has first been obtained from the division, unless otherwise provided by statutes or rule."). The Act provides that "[a] state certified inspector may, during reasonable hours, enter any building or go upon any premises in the discharge of the inspector's official duties for the purpose of making an inspection of work performed or for the purpose of testing any installation authorized within the jurisdiction of the inspector's trade certification." Section 60-13-42(A). To ensure compliance, "[t]he commission or division may enforce in the district court of the county in which the offense was committed the provisions of the . . . Act by injunction, mandamus or any proper legal proceeding." Section 60-13-53. Certain violations under the Act can bring criminal or disciplinary penalties. *See* Section 60-13-52 (penalizing falsely holding out as a contractor or journeyman); 14.5.2.16 NMAC (explaining that a fee or disciplinary action may be assessed for failure to obtain a permit before beginning work).

**{12}** But, the Division's statutory authority is still subject to the constitutional limitations of the Fourth Amendment. *See Marshall v. Barlow's, Inc.*, 436 U.S. 307, 325 (1978) (holding that part of the Occupation Safety and Health Act (OSHA) was unconstitutional "insofar as it purports to authorize inspections without a warrant or its equivalent"); *N.M. Envtl. Improvement Div. v. Climax Chem. Co.*, 1986-NMCA-137, ¶ 6, 105 N.M. 439, 733 P.2d 1322 (citing *Marshall* and concluding that if a statutory scheme provides the governmental agency with sufficient authority to obtain a search warrant and "consent to enter and inspect is denied, an administrative search warrant is [necessary]"). The Fourth Amendment which is applicable to the states through the Fourteenth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend IV;[1] *see Mapp v. Ohio*, 367 U.S. 643, 646 n.4, 655 (1961). The primary purpose of the Fourth Amendment is to "safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Mun. Court of City & Cty. of San Francisco*, 387 U.S. 523, 528 (1967).

**{13}** The United States Supreme Court has held that the Fourth Amendment applies to searches and seizures in the civil context. *Id.* at 534. Specifically, administrative searches by government inspectors "are significant intrusions upon the interests protected by the Fourth Amendment," *id.*, and thus, searches by administrative agencies must comport with the requirements and limitations of the Fourth Amendment. *See Barlow's, Inc.,* 436 U.S. at 311, 324-25 (holding that a search warrant was required to search the nonpublic area of an electrical and plumbing installation business even though the OSHA statute authorized warrantless searches of a business); *See v. City of Seattle*, 387 U.S. 541, 545 (1967) (holding that "administrative entry, without consent, upon the portions of commercial premises which are not open to the public may only be compelled through prosecution or physical force within the framework of a warrant procedure"); *Mimics, Inc.*, 394 F.3d at 847 (concluding that a building inspector "was required to seek a warrant to remain in compliance with the Fourth Amendment" to search a corporation's private condominium); *Climax Chem. Co.*, 1986-NMCA-137, ¶ 6 (considering an administrative inspection of a chemical plant and holding that "[o]btaining a search warrant, as was done in this case, is the proper procedure"). Therefore, "except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." *Camara*, 387 U.S. at 528-29 (citing supporting cases); *see Climax Chem. Co.*, 1986-NMCA-137, ¶ 6 ("In the event consent to enter and inspect is denied,

---

1 Although Respondent briefly cites to N.M. Const., art. II, § 10, he fails to develop any argument that the New Mexico Constitution offers different protections. "This Court has no duty to review an argument that is not adequately developed." *Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701. Therefore, we only review his federal constitutional claim.

an administrative search warrant is required." (citing *Barlow's, Inc.*, 436 U.S. 307)). We begin by examining whether the order satisfies the requirements of the Warrant Clause.

**{14}**　The Division argues that no inspection occurred without judicial authorization, and therefore, the Fourth Amendment is not implicated here. Citing no authority, the Division argues that the order "provid[ed] much more protection and accountability than a search warrant" and is "certainly a more than adequate substitute for a warrant."

**{15}**　The "precise and clear" words of the Warrant Clause of the Fourth Amendment "require only three things" for a valid search warrant:

> First, warrants must be issued by neutral, disinterested magistrates. Second, those seeking the warrant must demonstrate to the magistrate their probable cause to believe that the evidence sought will aid in a particular apprehension or conviction for a particular offense. Finally, warrants must particularly describe the things to be seized, as well as the place to be searched.

*Dalia v. United States,* 441 U.S. 238, 255 (1979) (internal quotation marks and citations omitted). We first address the requirement that the Division demonstrate probable cause because it is dispositive to our analysis.

**{16}**　Administrative probable cause exists based on either: (1) "specific evidence of an existing violation" or (2) "a showing that reasonable legislative or administrative standards for conducting an inspection are satisfied with respect to a particular establishment." *Barlow's, Inc.*, 436 U.S. at 320 (alteration, omission, internal quotation marks, and citation omitted). Since the Division based its order to search on specific complaints regarding Respondent, this case falls into the first category, specific evidence. While "[a]n administrative warrant application based upon specific evidence is more analogous to an application for a criminal search warrant than to an application for a search warrant under a regulatory scheme[,]" *Marshall v. Horn Seed Co.*, 647 F.2d 96, 101 (10th Cir. 1981), the probable cause standard in administrative cases differs from the standard in criminal cases. *See Wilson Corp. v. State ex rel. Udall*, 1996-NMCA-049, ¶ 9, 121 N.M. 677, 916 P.2d 1344 (stating that "probable cause does not have the same meaning in the context of administrative searches that it has in the context of searches for evidence of crime"). Rather, when, like in this case, the search is "grounded not upon conformance with administrative or legislative guidelines but upon 'specific evidence' of violations . . ., there must be some plausible basis for believing that a violation is likely to be found." *Marshall*, 647 F.2d at 102. "The facts offered must be sufficient to warrant further investigation or testing." *Id.* For an administrative warrant, "[i]t is not sufficient that the affiant . . . simply state that a complaint was received and detail the conditions alleged to be unsafe[;]" rather, the "warrant application must, of course, inform the [judicial officer] of the substance of the complaint so that [it] can determine whether the alleged conditions, if true, constitute a violation." *Id.* at 103.

**{17}** Here, the district court's order found that the Division had statutory authority to conduct an inspection; however, the order lacked a determination of whether probable cause supported an administrative search. As we have stated, merely having statutory authority is not the end of the inquiry. *See Climax Chem. Co.*, 1986-NMCA-137, ¶¶ 5-6 (considering a similar statutory scheme in which the statute provides for inspections and holding that a search warrant was required). Instead, the district court needed to determine whether there was a plausible basis to believe that a violation of the code is likely to be found. *Id.* ¶ 12. Because the order lacked any findings related to probable cause, the district court erred. To be clear, our holding is not that the district court lacked specific evidence of an existing violation to support a finding of probable cause under this standard, but rather that the district court did not enter the requisite findings, whether or not there was probable cause. We now turn to whether this case falls into an exception permitting warrantless searches.

**{18}** Because Respondent did not consent to the inspection, a warrant supported by probable cause is required unless this case falls into one of the "certain carefully defined classes of cases" permitting warrantless searches. *See Michigan v. Tyler*, 436 U.S. 499, 508-09 (1978) (internal quotation marks and citation omitted). The Division argues that this case does not require a search warrant because it falls into an exception to the general prohibition of warrantless searches that has developed for pervasively regulated businesses and " 'closely regulated' industries long subject to close supervision and inspection." *Barlow's, Inc.*, 436 U.S. at 313 (internal quotation marks and citation omitted); *see United States v. Biswell,* 406 U.S. 311, 316 (1972) ("[I]f the law is to be properly enforced and inspection made effective, inspections without warrant must be deemed reasonable official conduct under the Fourth Amendment."); *State ex rel. Envtl. Improvement Agency v. Albuquerque Publ'g. Co.*, 1977-NMSC-083, ¶ 3, 91 N.M. 125, 571 P.2d 117 (listing requirements for a nonconsensual administrative inspection of a business); *State v. Montoya*, 1993-NMCA-097, ¶ 10, 116 N.M. 297, 861 P.2d 978 (explaining that "if certain criteria are met, closely regulated industries with a history of pervasive government regulation may be inspected without a warrant"). The United States Supreme Court has explained that "[t]he element that distinguishes these [closely regulated] enterprises from ordinary businesses is a long tradition of close government supervision, of which any person who chooses to enter such a business must already be aware." *Barlow's, Inc.*, 436 U.S. at 313.

**{19}** The Tenth Circuit has already rejected the argument that "balancing the important government interest in safe construction against any individual harm from government intrusion justifies as reasonable brief, unauthorized investigative entries[.]" *Mimics, Inc.*, 394 F.3d at 844. The Tenth Circuit explained that "New Mexico's interest in safeguarding the well-being of the public by prohibiting unsafe construction does not necessarily equate with a need for nonconsensual, warrantless, investigative entries." *Id.* We are persuaded by the Tenth Circuit, and the Division fails to distinguish this case or cite us to any other contrary authority suggesting that construction is a pervasively regulated industry. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."); *see also Barlow's, Inc.*, 436 U.S. at 313 (clarifying that "[t]he clear

import of our cases is that the closely regulated industry of the type involved in *Colonnade* [*Catering Corp. v. United States*, 397 U.S. 72 (1970)] and *Biswell* is the exception[,]" not the general rule).

**{20}** Finally, the Division argues that Respondent's property is open to the public, and therefore a warrantless search is lawful. However, the Division's conclusory statement is an undeveloped argument that we will not review. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what [the plaintiff's] arguments might be.").

**{21}** Thus, under the facts before us, no exception to the warrant requirement applies. Because the district court only found that the Division had the statutory authority and did not determine whether there was probable cause to support an administrative search warrant, we hold that the district court erred by ordering enforcement of the Division's order.

## II.     Respondent's Additional Arguments

**{22}** Because we remand this case for further proceedings, we address Respondent's remaining arguments. We conclude they are all meritless.

**{23}** First, Respondent argues that the Division lacks standing to bring this petition against Respondent because the Division lacks the requisite statutory authority. However, as discussed above, Sections 60-13-42 and 60-13-53 give the Division the authority to enforce the Act "in the district court of the county in which the offense was committed . . . by injunction, mandamus or any proper legal proceeding." Section 60-13-53. Respondent's arguments regarding any other statutory authority are inapposite.

**{24}** Respondent additionally argues, as he did below, that the district court judge, Judge Schneider, abused her discretion in refusing to recuse herself from this case. Respondent bases this claim on Judge Schneider's former representation of the Property Owners' Committee of Rancho Ruidoso Valley Estates (POCRRVE), a committee Respondent has a contentious relationship with, and the fact that Respondent met with Judge Schneider years ago relating to her representation of POCRRVE. Respondent contends that Judge Schneider "had prior personal intimate knowledge of the parties [and] issues, had formerly represented the party or parties that made the false allegations to [the Division], and overall gave the appearance that she would be biased."

**{25}** "We review the denial of a motion to recuse for an abuse of discretion." *State v. Trujillo*, 2009-NMCA-128, ¶ 9, 147 N.M. 334, 222 P.3d 1040. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the [district] court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted).

**{26}**   Rule 1-088.1(G) NMRA states that "[n]o district judge shall sit in any action in which the judge's impartiality may reasonably be questioned under the provisions of the Constitution of New Mexico or the Code of Judicial Conduct[.]" However, "there must be a reasonable factual basis for doubting the judge's impartiality[,]" *State ex rel. Bardacke v. Welsh*, 1985-NMCA-028, ¶ 62, 102 N.M. 592, 698 P.2d 462, and "[a] claim of bias, including a claim of an appearance of bias, cannot be based on mere speculation." *Trujillo*, 2009-NMCA-128, ¶ 11. "[R]ecusal is only required when a judge has become so embroiled in the controversy that he [or she] cannot fairly and objectively hear the case." *State v. Riordan*, 2009-NMSC-022, ¶ 14, 146 N.M. 281, 209 P.3d 773 (alteration, internal quotation marks, and citation omitted). "In determining whether an objective observer would conclude that a judge's impartiality was questionable, an appellate court should look to see how the judge arrived at the decision not to recuse and then should review the judge's actions for bias." *Trujillo*, 2009-NMCA-128, ¶ 10 (internal quotation marks and citation omitted).

**{27}**   In *Trujillo*, this Court examined whether a district court judge abused its discretion when it denied a request to recuse, upon allegations that before joining the bench, the judge had been appointed as a contract public defender to represent the victim in a separate matter. *Id.* ¶¶ 3, 10. However, a private investigator in the case determined that the judge's former law partner actually appeared at all the hearings in the victim's case. *Id.* ¶ 5. The judged stated on the record that she did not personally represent the victim and thus denied the motion to recuse. *Id.* ¶ 4. This Court held that the judge did not abuse her discretion because she did not actually represent the victim, and she had no knowledge of the case. *Id.* ¶ 12.

**{28}**   Similarly, here, Judge Schneider explained on the record that she had no independent, personal knowledge or recollection or any prior legal proceeding that would cause her to be biased, and that she was convinced she could be fair and impartial. The record reveals that Judge Schneider's former client, POCRRVE, was not a party to this case. Like *Trujillo*, Judge Schneider did not actually represent a party in this case, and she had no recollection of interacting with Respondent. Respondent has not shown a factual basis to demonstrate bias, and thus, we cannot say that Judge Schneider abused her discretion by not recusing herself.

**{29}**   Respondent also argues that the Division sought entrance to his property to obtain evidence of alleged criminal violations of Section 60-13-52 (listing criminal penalties for holding out as a contractor or journeyman within the meaning of the Act without a license), and thus, the district court violated his rights by refusing to appoint him counsel. Because Section 60-13-52 regards misdemeanors, Respondent additionally argues that this case is therefore barred by the criminal statute of limitation for misdemeanors. The criminal statute of limitations does not apply since this is a civil matter regarding failure to permit and have inspections, and does not involve criminal or unlicensed contracting. Additionally, Respondent fails to cite us to anywhere in the record in which the Division sought to pursue criminal penalties under Section 60-13-52. We conclude that Respondent does not have a right to counsel. *See Bruce v. Lester*,

1999-NMCA-051, ¶ 4, 127 N.M. 301, 980 P.2d 84 (explaining that a party in a civil proceeding "does not have a right to appointed counsel").

{30}    We also reject Respondent's unsupported argument that a court should not hold a pro se party to the same standard as attorneys. We have already stated, on many occasions, that we hold pro se litigants to the "same standard of conduct and compliance with court rules, procedures, and orders as are members of the bar." *Newsome v. Farer*, 1985-NMSC-096, ¶ 18, 103 N.M. 415, 708 P.2d 327. To the extent Respondent argues that holding him to the "technical niceties of the law" was a violation of his constitutional rights, this argument is unpreserved, and we will not review it. *See Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 24, 314 P.3d 688 ("To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the [district] court on the same grounds argued in the appellate court." (internal quotation marks and citation omitted)).

{31}    Respondent's argument that the Division "enter[ed] into a scheme to abuse the Electronic Filing System" and misused Odyssey is not developed and relies on facts not in the record proper before us. We therefore also do not reach this argument. *See Muse v. Muse*, 2009-NMCA-003, ¶ 51, 145 N.M. 451, 200 P.3d 104 ("It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence.").

{32}    Finally, to the extent Respondent argues that the district court erred by failing to have hearings on all of his motions he filed, we are not persuaded. "A request for hearing shall be filed at the time an opposed motion is filed." Rule 1-007.1(G) NMRA. The district court pointed out to Respondent on the record that to have a hearing on his motions, he had to request a hearing with the district court. We have found nowhere in the record in which Respondent has requested a hearing that was not granted.

**CONCLUSION**

{33}    While the district court and the Division thoroughly followed the statutory requirements, such statutory adherence does not, on its own, satisfy the important Fourth Amendment requirements of the Warrant Clause. For the aforementioned reasons, this case is reversed and remanded to the district court with instructions to make a determination of whether probable cause exists to support the issuance of an administrative search warrant.

{34}    **IT IS SO ORDERED.**

**M. MONICA ZAMORA, Chief Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**MICHAEL D. BUSTAMANTE, Judge Pro Tempore**